**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Jack B. WILKINS, Respondent.**

**SCBD No. 4024.**

Supreme Court of Oklahoma.

June 7, 1995.

Allen J. Welch, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Richard A. Nelson, Oklahoma City, for respondent.

HODGES, Justice.

The Complainant, Oklahoma Bar Association (OBA), filed a complaint against the Respondent, Jack B. Wilkins, alleging the Respondent had violated rule 1.4 of the Rules Governing Disciplinary Proceedings, Okla. Stat. tit. 5, ch. 1, app. 1–A (1991), and rules 1.15 and 8.4 of the Rules of Professional Conduct, Okla.Stat. tit. 5, ch. 1, app. 3A (1991). The complaint consisted of two counts.

## FACTS

The OBA and the Respondent stipulated to the following facts. As to Count I, Ms. C retained Respondent to collect back child support beginning in July 1987. Ms. C continues to retain Respondent for the same purpose. On February 24, 1993, Respondent received $500 from Ms. C's former husband. On April 5, 1993, Respondent wrote a check to Ms. C. The check was returned for insufficient funds. On May 14, 1993, Respondent gave Ms. C a cashier's check to replace the returned check.

The record supports these stipulations. Other pertinent facts are contained in the record. After Respondent replaced the returned check with the cashier's check, Ms. C cashed the personal check and retained the funds from both. Respondent received a payment on September 15, 1993, and did not pay Ms. C until October 21, 1993. During the hearing, Respondent admitted that he did not always promptly notify Ms. C when he received payments from her ex-husband. Twice Respondent could not determine when he received the payments.

Copies of Respondent's bank statements for his trust account show that he was overdrawn from January 12, 1993, until January 25, 1993. During this time, Respondent wrote four checks for which there were insufficient funds. In February 1993, Respondent wrote two checks for which there were insufficient funds. In March, Respondent was overdrawn twice and wrote two checks for which there were insufficient funds. In April, Respondent wrote four checks for which he did not have the funds in the account and was overdrawn from April 6 until April 23. In May of 1993, Respondent was overdrawn from the twelfth until the twenty-seventh. Respondent admitted that his record keeping was "slip shod" during this time.

As to Count II involving Mr. J, the parties stipulated to the following facts. In 1988, Respondent represented Mr. J in a criminal matter. In 1991, Mr. J still owed Respondent attorney fees for representation in the criminal matter. In July 1991, Mr. J re-

tained Respondent to represent him for injuries resulting from an automobile accident.

Mr. J and Respondent executed a written contract. There was nothing in the contract regarding the $3,500 unpaid fee from the prior representation in the criminal matter. The contract provided Mr. J would receive 60% of any recovery and the remaining 40% would be retained by Respondent. Respondent, on behalf of Mr. J, settled the claim for $10,500. Mr. J signed a release of all claims.

The parties further stipulated on December 18, 1991, Respondent paid Mr. J $3,000.00 and retained $4,200.00 from the settlement. At the time of the settlement, Mr. J owed three different medical providers as a result of his injuries. Southwest Physical was paid in full an amount of $1,570.40 on January 19, 1994. Association Orthopedics, Inc., was paid in full an amount of $789.00 on January 18, 1994. Dr. Steven Watson, D.O., was paid $1,000.00 on September 19, 1994. Dr. Watson is still owed $1,560.00.

Although not stipulated, these payments were made on advice of Respondent's attorney and after Respondent was aware of a complaint against him with the OBA. After deducting the medical bills that Respondent paid from the settlement, Respondent still retains $348.36[1] of the 60% of the settlement owed Mr. J. The record further shows that Mr. J called Respondent on several occasions and sent him a letter about the medical bills. Respondent did not return the calls or respond to the letter.

Mr. J testified Respondent agreed to pay the medical bills. Respondent testified he called Mr. J with the $10,500.00 settlement offer. Respondent stated, "[Y]ou know, that would put $3,000 in your pocket, take care of all the prior bills and everything." Mr. R, a friend of Mr. J's went with him to get the settlement check from the Respondent. Mr. R testified the Respondent explained to Mr. J that the $3,000 was Mr. J's share after the medical bills were paid. Mr. R stated Respondent told Mr. J all the bills would be paid.

The evidence regarding the other allegations is conflicting. The OBA alleged Respondent intentionally concealed the amount of the settlement from Mr. J and refused to allow Mr. J to see the front of the settlement check. Respondent denied this statement was true. The record reflects that Mr. J has limited reading ability and that he tries to conceal this limitation. The testimony is conflicting as to whether Respondent knew of Mr. J's limitations during his representation of Mr. J. Although the OBA did not show by clear and convincing evidence Respondent refused to allow Mr. J to see the settlement check or Respondent knew of Mr. J's limitations, the other allegations regarding Count II are supported by the record.

## RECOMMENDATIONS AND FINDINGS OF THE PROFESSIONAL RESPONSIBILITY TRIBUNAL

After reviewing the record and taking testimony, the Professional Responsibility Tribunal (PRT) found Respondent had violated the Rules of Professional Conduct, specifically rule 1.15(a) by commingling his money with a client's, rule 1.15(b) by failing to notify and remit payments made for his client's benefit, and rule 8.4(c) by converting his

1. The amount of $348.06 was derived by the following:

| Settlement less Medical Bills | | | $ | 10,500.00 |
|---|---|---|---|---|
| Southwest Physical | (paid) | 1,570.40 | | |
| Assoc. Orthopedics | (paid) | 789.00 | | |
| Dr. Watson | (paid) | 1,000.00 | | |
| Dr. Watson | (unpaid) | 1,560.00 | | |
| | | | — | 4,919.40 |
| | | | | 5,580.60 |
| multiplied by the contract percentage (.60) | | | × | .60 |
| | | | | 3,348.36 |
| less $3,000 previously paid to Mr. J | | | — | 3,000.00 |
| Balance still owed to Mr. J | | | | 348.36 |

client's money to his own use. The PRT recommended Count II should be dismissed because the complainant had failed to meet its burden of proof. The PRT recommended Respondent should be suspended from the practice of law for one year and be assessed costs.

## STANDARD OF REVIEW

 This Court will review the record de novo and is not bound by the recommendation of the PRT. *State ex rel. Okla. Bar Ass'n v. Rozin,* 824 P.2d 1127, 1130 (Okla. 1991). Even though this Court is not required to follow the recommendations of the PRT, the PRT's recommendation is accorded great weight because of the PRT's unique position. *Id.* This Court will not impose discipline absent clear and convincing evidence of a violation of the rules governing attorneys. *State ex rel. Oklahoma Bar Association v. McMillian,* 770 P.2d 892, 895, n. 6 (Okla.1989).

## VIOLATION OF RULES OF PROFESSIONAL CONDUCT AND RULES GOVERNING DISCIPLINARY PROCEEDINGS

### A. RULE 1.4 OF THE RULES OF PROFESSIONAL CONDUCT

 Rule 1.4 of the Rules of Professional Conduct provides: "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." Respondent admitted he did not always promptly inform Ms. C about child support payments. In fact, on at least two occasions, Respondent took several weeks to inform Ms. C of a support payment and to disburse her share of the funds.

As to Count II, Respondent agreed to pay Mr. J's medical bills. Mr. J called Respondent about the payment of those bills. Respondent admitted he did not return the call or respond to Mr. J's letter. Respondent failed to promptly pay the medical bills and did not inform Mr. J of this failure. Respondent's failure to keep his client reasonably

informed and to comply with requests for information is a violation of rule 1.4 of the Rules of Professional Conduct.

In *State ex rel. Okla. Bar Ass'n v. Thompson,* 864 P.2d 339 (Okla.1993), an attorney was suspended from the practice of law for 90 days for, among other things, failing to keep his client adequately informed. In *State ex rel. Okla. Bar Ass'n v. Wolfe,* 864 P.2d 335 (Okla.1993), this Court suspended an attorney for six months for failing to keep clients informed, failing to adequately represent a clients interest, and failing to cooperate with the OBA's investigation. A four-month suspension was deemed the proper discipline in *State ex rel. Okla. Bar Ass'n v. Johnston,* 863 P.2d 1136 (Okla.1993), for failing to communicate with clients and to act promptly in their behalf, commingling and conversion of funds, making a false statement to the court, and acting incompetently.

### B. RULE 1.15(a) OF THE RULES OF PROFESSIONAL CONDUCT

Rule 1.15(a) provides: "A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with representation separate from the lawyer's own property." This provision prohibits an attorney from commingling a client's funds with the attorney's funds. *State ex rel. Okla. Bar Ass'n v. Johnston,* 863 P.2d 1136 (Okla.1993).

In this case Respondent's trust account was overdrawn at least several times between January and May of 1993. Respondent wrote a check on his trust account to Ms. C for her share of the child support payment which was returned for insufficient funds. Since the money was not in the trust account, it must have been diverted for other purposes. Respondent then paid her with a cashier's check from his personal funds. Respondent acknowledged it was safe to assume Ms. C's share was used for some purpose other than to pay her. Further, Respondent could not recall if the child support payment was ever used toward payment of personal expenses. We agree with the PRT that this conduct was a violation of rule 1.15(a).

The discipline for commingling-type cases ranges from disbarment for misappropriation, *State ex rel. Okla. Bar Ass'n v. Miskovsky*, 832 P.2d 814 (1992), to a public reprimand, *State ex rel. Oklahoma Bar Association v. McManus*, 852 P.2d 727 (Okla.1993). Simple conversion is the intermediate level of culpability and occurs when an attorney fails to apply a client's funds to the purpose for which they were entrusted. *State ex rel. Okla. Bar Ass'n v. Farrant*, 867 P.2d 1279 (Okla.1994). Because Respondent's trust account was overdrawn several times and the check to Ms. C, along with several other checks written on Respondent's trust account were returned for insufficient funds, Respondent failed to follow rule 1.15(a) but instead commingled the fund's of his clients with his own. This behavior constitutes simple conversion because Ms. C eventually was paid and there was no purposeful fraud or deceit involved. Because simple conversion falls between misappropriation and commingling, *see id.*, the discipline would generally fall between a suspension and disbarment.

The facts in *Farrant*, 867 P.2d at 1279, are similar to the facts here. The attorney received money for payment of an investigator. Rather than pay the investigator the attorney applied the money to his fee. For this act of simple conversion and other infractions, the attorney was suspended for one year.

In *State ex rel. Oklahoma Bar Ass'n v. Carpenter*, 863 P.2d 1123 (Okla.1993), the attorney failed to keep proper record of his client's money, lent money to his clients, commingled his client's funds with his own, and failed to promptly deliver his client's funds. The attorney was suspended for six months followed by a two and one-half year probation.

## C. RULE 1.15(B) OF THE RULES OF PROFESSIONAL CONDUCT

Rule 1.15(b) provides:

Upon receiving funds or other property in which client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

On several occasions, Respondent failed to notify Ms. C that he had received payments from her ex-husband. On one occasion, Respondent did not pay Ms. C her share of the funds for five weeks, and on another occasion, he took three months. On two other occasions, Respondent does not know when he received the funds.

Respondent retained the money from Mr. J's settlement to pay the medical bills. Respondent did not promptly pay the medical bills as required by rule 1.15(b). Further, Respondent did not account to Mr. J for the money. In fact, Respondent did not even respond to Mr. J' calls or his letter of inquiry. These acts are a violation of rule 1.15(b).

## D. RULE 8.4(C) OF THE RULES OF PROFESSIONAL CONDUCT AND 1.4 OF THE RULES GOVERNING DISCIPLINARY PROCEEDINGS

Rule 8.4(c) of the Rules of Professional Conduct provides: "It is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

The evidence shows Respondent and Mr. J entered into a contract wherein Mr. J was to receive 60% of the settlement and Respondent retain 40%. Mr. J was paid only 29% of the settlement, or $3,000, with Respondent retaining the other 71%. Respondent did not pay the medical bills as he had agreed to do. In fact, Respondent did not pay any of the medical bills until these proceedings were initiated and his attorney told him to do so. Respondent did not explain to Mr. J that he was getting only 29% of the settlement check because Respondent was retaining the remainder to off set a prior bill. Respondent does not dispute the allegation Mr. J did not see the amount of the check. These actions are violation of 8.4 of the Rules of Professional Conduct.

Not only is this behavior a violation of the Rules of Professional Conduct, it is a violation of 1.4(b) of the Rules Governing Disciplinary Proceedings, Okla.Stat. tit. 5, ch. 1, app. 1–A (1991). Rule 1.4(b) provides: "Where money ... has been entrusted to any attorney for a specific purpose, he must apply it to that purpose. He may not avail himself of a counterclaim or set-off for fees against any money ... of his client coming into his hands for such specific purpose...."

In *State ex rel. Okla. Bar Ass'n v. Brown*, 773 P.2d 751 (Okla.1989), this Court held: "The fact that the client owes a fee to his attorney is no excuse for the attorney to appropriate to his own use the client's funds." In *Brown*, the attorney had appropriated his client's funds to himself as payment of his fee and "was not forthright" with his client concerning the disposition of the funds. This Court suspended the attorney for a period of six month for the violation of rule 1.4 as well as other violations of the rules governing attorneys.

## FINDINGS OF THIS COURT AND DISCIPLINE

Given Respondent's behavior, we cannot agree with him that a sixty-day suspension is sufficient to satisfy the goals of discipline. Respondent argues that we should follow the PRT's finding and dismiss Count II. Based on a de novo review, we find Count II is supported by clear and convincing evidence and should not have been dismissed.

We agree with the PRT regarding Count I and find the Respondent violated rules 1.4, 1.15(a), and 1.15(b) of the Rules of Professional Conduct and rule 1.4 of the Rules Governing Disciplinary Proceedings. However, we disagree with the PRT regarding Count II and reinstate it. We find Respondent's conduct violated rule 1.4 of the Rules Governing Disciplinary Proceedings and rules 1.15 and 8.4(c) of the Rules of Professional Conduct as alleged by the OBA. Further, we find that Respondent's conduct alleged in Count II was a violation of rule 1.4 of the Rules of Professional Conduct in Count II.

Based on the facts before this Court, we find a six-month suspension to be the appropriate discipline. Accordingly, Respondent is suspended from the practice of law for a period of six months to begin on the day this opinion becomes final. As a condition of reinstatement, Respondent is to show proof that he has paid the remaining medical bill to Dr. Watson for $1,560.00 and to remit $348.36 to Mr. J to comply with the contract. The costs of the proceedings in this disciplinary action in the amount of $876.42 are to be paid by the Respondent within thirty days from the day this opinion becomes final.

ATTORNEY SUSPENDED FROM THE PRACTICE OF LAW FOR SIX MONTHS AND ORDERED TO PAY COSTS.

ALMA WILSON, C.J., KAUGER, V.C.J., and LAVENDER, HARGRAVE and SUMMERS, JJ., Concur.

SIMMS, Justice, concurring in part and dissenting in part, joined by OPALA, J. and WATT, J.

I would accept the recommendation of the Professional Responsibility Tribunal and suspend Respondent for one year.