**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

**v.**

**Edmond Dale LEIGH, Respondent.**

OBAD No. 1175.
SCBD No. 4044.

Supreme Court of Oklahoma.

March 12, 1996.

Janis Hubbard, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Complainant.

R. Michael Cantrell, Patricia K. Cantrell, Oklahoma City, for Respondent.

OPALA, Justice.

In this disciplinary proceeding against a lawyer, the issues to be decided are: (1) Is the record[1] sufficient for a meaningful *de novo* consideration of the complaint's disposition? and (2) Is a 180–day suspension with imposition of costs an appropriate disciplinary sanction to be imposed for respondent's breach of professional discipline? We answer both questions in the affirmative.

The Oklahoma Bar Association [OBA or Bar] charged Edmond Dale Leigh [Leigh or respondent], a licensed lawyer, with one count of professional misconduct. The Bar and Leigh then entered into a stipulation of facts and agreed conclusions of law with a joint recommendation for *public reprimand* as discipline to be imposed for the charged professional misconduct. Although a panel of the Professional Responsibility Tribunal [PRT] adopted the parties' findings of fact and conclusions of law, it rejected the recommended discipline, proposing instead as the appropriate sanction a *120–day suspension, compensatory payment of $3,200 to respondent's client* and the costs of this proceeding. The PRT's suggested disciplinary sanction rests on the following observation:

> "The Trial Panel heard and observed the Respondent in somewhat lengthy testimony, including responding to questions from the members of the Trial Panel. The Trial Panel's impression was that the Respondent was somewhat evasive and less than forthright in his testimony and did not appear to accept the stipulated violations as meaningful or serious. The Trial Panel rejected the proposed recommendation stipulated by the parties, and recommends that the Respondent be suspended for a period of 120 days, that he make restitution of $3,200.00 to James A. Mays, the complaining party, and pay all costs of these proceedings."

## COUNT I

Respondent, a licensed practitioner, took in May 1990 the exam for certification as a *certified public accountant* [CPA]. On July 31 of that year he received his grades from the Oklahoma Board of Public Accountancy [PA Board],[2] which indicated he did *not* pass

---

1. The record consists of a transcript of the Professional Responsibility Tribunal's hearing and exhibits, the tribunal's report, and the Agreed Stipulations and Recommendation for Discipline, all are submitted by the respondent and the Oklahoma Bar Association.

2. The PA Board's name was changed to the Oklahoma Accountancy Board in 1992. 59 O.S.Supp.1992 § 15.2A.

all parts of that exam. Although lacking CPA status, Leigh used legal stationery which bore the abbreviation "CPA" placed after his name. The letterhead also designated him as "Senior Attorney and Director of Services" *even though he was the only lawyer* in the legal corporation (Leigh & Company). Respondent received a public accountant's [PA] license in September 1990, but did not obtain an annual permit to practice until June 1991. On August 22, 1991 respondent obtained his CPA certificate, but the PA Board suspended it for two years from that date because he (a) had improperly used the CPA designation and (b) did not have an annual permit to practice public accounting with a PA license. Leigh's actions were termed violative of both the Public Accountancy Act of 1968 (as amended) [3] and the PA Board's Rules of General Application.[4]

On November 29, 1990 James A. Mays [Mays], owner of Quality Cabling Company [Quality], and Treca Taylor [Taylor], secretary, met with respondent about taxes owed to the Internal Revenue Service [IRS]. Because Leigh held himself out by his business card to be a tax lawyer and a CPA,[5] Mays, believing him to be an expert tax practitioner, paid him a $1,000 retainer to handle the IRS problems.

Shortly afterwards, Leigh completed the necessary paperwork to form an Oklahoma corporation with the name Deain Service Company [Deain]. Deain then purchased the assets of Mays d/b/a Quality Cabling Co. On November 30, 1990, Leigh sent Mays a statement for services he had rendered to Mays, Quality and Deain. This was followed by a series of billing statements, which covered the period from December 1990 through April 1991.[6] These statements were typed on respondent's legal letterhead bearing after his name the following: "Edmond Dale Leigh, J.D., CPA, CFP, Senior Attorney and Director of Services." Leigh also used the CPA title to support a billing rate on five of the statements when, in fact, no CPA performed services for Mays. On the same legal stationery respondent corresponded on behalf of Mays with American General Finance in Norman, Oklahoma and Public Employees Services Corporation in Oklahoma City.

On May 16, 1991 respondent's professional corporation, Leigh & Company, sued Deain for $4,553.25 for his services and that of his staff between November 29, 1990 and April 30, 1991. Mays (on behalf of Deain) filed an answer, counterclaim and third-party petition, alleging fraud and negligence by respondent. On January 22, 1993, the jury returned *three verdicts for* third-party plaintiff *Mays* (against Leigh) on his claim for (1) fraud ($7,400), (2) negligence ($19,400) and (3) punitive damages ($22,500). A *fourth verdict—for Leigh & Company*—was against Mays for Leigh's services ($1,580.75). *Leigh & Company brought an appeal from the judgment on the first three jury verdicts.*[7]

On May 17, 1991 (the day after Leigh & Company's suit) Mays, through his sister, filed a complaint against Leigh with the PA Board. This resulted in a suspension of Leigh's CPA certificate until August 21, 1993. On May 18, 1993 respondent filed a petition for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Western District of Oklahoma. The largest obligation Leigh sought to discharge was Mays' January 22 judgment. Respondent dismissed his bankruptcy case on January 20, 1994 and refiled it on February 22 of that year. Finding that Leigh's plan lacked good

---

3. 59 O.S.1991 §§ 15.1 et seq. (the name of the statute was changed to Oklahoma Accountancy Act in 1992).

4. Agreed Order of Suspension before the PA Board (August 22, 1991).

5. A business card used by respondent during the period in question bore the following information:
    "TAX LAWYER
    EDMOND DALE LEIGH, J.D., CPA, CFP

    Representation and Appeals
    IRS Problem Resolution ..."

6. Using his legal letterhead, respondent sent billing statements to Mays on December 19 and 31, 1990, January 18, 1991, February 15 and 28, 1991, March 15 and 31, 1991, and April 15 and 20, 1991.

7. We are not informed of these appeals' outcome.

faith, the court withheld its confirmation of the proposed discharge and later dismissed the case. *Respondent's appeal from this order is pending.*[8]

On July 14, 1993, two months after Leigh had petitioned for Chapter 13 bankruptcy, Mays filed a grievance against the respondent with the Bar. The Bar and Leigh agreed that he violated Rules 1.5, 4.1, 7.1, 7.4, 7.5 and 8.4(c)[9] of the Oklahoma Rules of Professional Conduct. Their stipulation includes no mitigating factors. The case is before us for *de novo* consideration.

8. We are not informed of this appeal's outcome.

9. The pertinent terms of Rule 1.5, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A, are:

"(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

.        .        .        .        .

(3) the *fee customarily charged in the locality for similar legal services;*

.        .        .        .        .

(6) *the nature* and length *of the professional relationship* with the client; (7) the *experience,* reputation, and *ability of the lawyer* or lawyers performing the services; * * *" (Emphasis added.)

The pertinent terms of Rule 4.1, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A, are:

"In the course of representing a client a lawyer shall not knowingly: (a) make a *false statement* of material fact or law *to a third person;* * * *" (Emphasis added.)

The terms of Rule 7.1, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A, are:

"(a) A lawyer *shall not make a false or misleading communication* about the lawyer or the lawyer's services. A communication is false or misleading if it is:

(1) a communication which contains a material misrepresentation of fact or law, or omits information necessary to make the communication, considered as a whole, not materially misleading; (2) a communication which is likely to create an unjustified expectation about the results the lawyer can achieve; (3) a communication which states or implies the lawyer can achieve results by means that violate a law, rule, regulation or judicial, executive or administrative order or the Rules of Professional Conduct; or (4) a communication which compares the lawyer's services with other lawyer's services

## I

## FALSE AND MISLEADING COMMUNICATIONS ON LEGAL LETTERHEAD, BUSINESS CARDS AND BILLING STATEMENTS

■ A lawyer shall not make a false or misleading communication about his (or her) services (Rule 7.1)[10] or knowingly make a false statement of material fact or law to a third person (Rule 4.1).[11] A communication is false or misleading if it (a) contains a

when the comparison cannot be factually substantiated." (Emphasis added.)

The terms of Rule 7.4, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A, are:

"(a) A lawyer may communicate the fact that the lawyer does or does not practice in particular fields of law or limits his practice to or concentrates in particular fields of law. A lawyer shall not state that the lawyer is a specialist except as follows:

(1) a lawyer admitted to engage in patent practice before the United States Patent and Trademark Office may use the designation "Patent Attorney" or a substantially similar designation; (2) a lawyer engaged in admiralty practice may use the designation "Admiralty," "Proctor in Admiralty" or a substantially similar designation; and (3) a lawyer who is certified as a specialist in a particular field of law or law practice by the Supreme Court of the State of Oklahoma may hold himself out as such, but only in accordance with the rules prescribed by the Court."

The pertinent terms of Rule 7.5, Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A, are:

"(a) A *lawyer shall not use* a firm name, *letterhead or other professional designation* that violates Rule 7.1. * * *" (Emphasis added.)

The pertinent terms of Rule 8.4(c), Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A, are:

"*It is professional misconduct for a lawyer to:*

.        .        .        .        .

(c) *engage in conduct involving dishonesty, fraud, deceit or misrepresentation;* * * *" (Emphasis added.)

10. For the pertinent terms of Rule 7.1, see *supra* note 9.

11. For the pertinent terms of Rule 4.1, see *supra* note 9. *See also State ex rel. Okl. Bar Ass'n v. Lacoste,* Okl., 813 P.2d 501, 502 (1991) (a lawyer misrepresented to a third party that he was presenting a payment in exchange for certain documents when, in fact, he had already stopped payment on the check); *State ex rel. Okl. Bar Ass'n v. McMillian,* Okl., 770 P.2d 892, 897–898

material misrepresentation of fact or law (Rule 7.1(a)(1)) or (b) is likely to create an unjustified expectation about the results the lawyer can achieve (Rule 7.1(a)(2)).[12] A lawyer's letterhead, billing statement or business card is a communication within the meaning of Rule 7.1.[13]

As a licensing agency for lawyers, this court has the responsibility to protect the public from those practitioners who falsely represent their specialities. This duty includes protection of governmental agencies (with whom a lawyer may deal on matters of some specialized law) from practitioners who would use their state licenses to misrepresent their true qualifications in a given field of legal expertise. A false, misleading or deceptive communication, which does not constitute commercial speech entitled to First Amendment protection, may be subject to regulation.[14]

The Bar asserts Leigh has violated the cited Rules of Professional Conduct (a) by the inclusion of "CPA" and "tax lawyer" on his business card, (b) by the use of "CPA, Senior Attorney and Director of Services" in his legal letterhead and (c) in his communications with third persons on behalf of his client.

We hold that respondent's use of the "CPA" designation on his legal letterhead and business card—*after he had failed to*

pass the CPA exam—is a *false* and *material communication* about his qualifications to both present and potential clients, as well as to third persons, which is likely to create an *unjustified expectation* about the results he can achieve. The letterhead not only misrepresented Leigh's status *qua* CPA, but also his position as a *senior* member of Leigh & Company when, in fact, he was a sole legal practitioner uncertified as a CPA. Furthermore, respondent's use of the "CPA" title to support a *billing rate* on his statements for services—printed on his legal letterhead—misrepresented the factors to be considered in arriving at the reasonableness of his fee. Respondent's conduct is not only false and misleading within the meaning of Rules 1.5, 4.1, 7.1, 7.4, and 7.5, but also constitutes professional misconduct under Rule 8.4(c).[15]

## II

### A 180–DAY SUSPENSION AND *PAYMENT OF COSTS* ARE AN APPROPRIATE SANCTION FOR RESPONDENT'S PAST PROFESSIONAL MISCONDUCT

The Oklahoma Supreme Court has *exclusive original* jurisdiction over Bar disciplinary proceedings.[16] The court's review is conducted by *de novo* consideration of the

(1989) (a lawyer misrepresented to a state judge and to opposing counsel that a bankruptcy action had been filed on behalf of a client when no such action had been taken).

**12.** For the pertinent terms of Rule 7.1(a)(1) and (2), see *supra* note 9.

**13.** For the pertinent terms of Rule 7.1, see *supra* note 9.

**14.** "It is now well established that lawyer advertising is commercial speech and, as such, is accorded a measure of First Amendment protection. *See, e.g., Shapero v. Kentucky Bar Assn.,* 486 U.S. 466, 472, 108 S.Ct. 1916, 1921, 100 L.Ed.2d 475 (1988); *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,* 471 U.S. 626, 637, 105 S.Ct. 2265, 2274, 85 L.Ed.2d 652 (1985); *In re R.M.J.,* 455 U.S. 191, 199, 102 S.Ct. 929, 935, 71 L.Ed.2d 64 (1982). Such First Amendment protection, of course, is not absolute." *Florida Bar v. Went For It, Inc.,* —— U.S.

——, ——, 115 S.Ct. 2371, 2375, 132 L.Ed.2d 541 (1995). "Under Central Hudson [*Gas & Electric Corp. v. Public Service Comm'n of N.Y.,* 447 U.S. 557, 563–564, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980)], the government may freely regulate commercial speech that concerns unlawful activity or is misleading." *Id.,* —— U.S. at ——, 115 S.Ct. at 2376. False, deceptive or misleading advertising is subject to governmental restraint. *Bates v. State Bar of Arizona,* 433 U.S. 350, 383–384, 97 S.Ct. 2691, 2708–2709, 53 L.Ed.2d 810 (1977); *Ibanez v. Florida Dep't of Business & Prof. Reg., Bd. of Accountancy,* 512 U.S. ——, ——, 114 S.Ct. 2084, 2088, 129 L.Ed.2d 118 (1994).

**15.** For the pertinent terms of Rules 1.5, 4.1, 7.1, 7.4, 7.5 and 8.4(c), see *supra* note 9.

**16.** *State ex rel. Okl. Bar Ass'n v. Raskin,* Okl., 642 P.2d 262, 265 (1982); *Tweedy v. Okl. Bar Ass'n,* Okl., 624 P.2d 1049, 1052 (1981); *In re Integration of State Bar of Oklahoma,* 185 Okl. 505, 95 P.2d 113, 114 (1939).

prosecution brought before it.[17] Neither the parties' stipulation nor the PRT panel's findings of fact or conclusions of law is binding on this court.[18] The ultimate responsibility for administration of professional discipline is ours alone.

■ While the Bar initially agreed with respondent that a public reprimand was an appropriate sanction, its position *changed after the PRT hearing.* The Bar now urges that we adopt the PRT's recommended discipline to be imposed (a) by a 120–day suspension, (b) by $3,200 in compensatory payment to Mays and (c) by assessing the costs of this proceeding. According to the Bar, because respondent is unwilling to perceive or admit the disrepute his conduct brought on the profession and the wrongfulness of his actions, he will likely repeat these intolerable derelictions. Leigh's failure to recognize any adverse consequence from his actions, the Bar urges, shows a willful disregard for his client's cause, for the courts and for the interest of the public.

### A.

### *180–Day Suspension*

Leigh argues that the PRT's observations may have been based on what it "perceived as … [his] personality flaws" when, in fact, he was "simply being slow and deliberate in his answers, and giving very narrow legal construction to them." Respondent urges that his "mannerisms did not and should not be considered as indicating a lack of concern or remorse."

■ A lawyer's license is a certificate of professional fitness to serve the clients as a legal practitioner. Public confidence in the practitioner is essential to the proper functioning of the profession. A *lawyer's misconduct* adversely reflects on the entire Bar because it exhibits a lack of commitment to the client's cause, to the court's expectations, and to the ideals of the profession.[19] The respondent has breached his obligation to uphold, with strict fidelity, the high standards imposed upon the Bar. His false and misleading communications about his professional qualifications call for the imposition of discipline. The PRT panel recommended that respondent be suspended from the practice of law for a 120–day interval. We deem the appropriate discipline to be a 180–day suspension.

### B.

### *Compensatory Payment to Client*

Leigh urges the PRT's recommendation that he pay "restitution" of $3,200 to his client neither is an appropriate sanction for his misconduct nor can be supported by the record. We agree.

It was called to the PRT's attention that the rights of respondent and his client, *inter se,* were in controversy in pending civil litigation. According to Leigh, his clients paid him $3,200 for legal fees and costs [20] and he received a jury verdict against Mays for another $1,580.75, the majority of which has been collected.[21] Respondent appealed from both the judgment on the three verdicts against him (in Mays' third-party action) and from the dismissal of his bankruptcy case. *These appeals were pending at the time of the PRT hearing.* We are not advised as to the outcome of the appellate review.[22]

17. *State ex rel. Okl. Bar Ass'n v. Lloyd,* Okl., 787 P.2d 855, 858 (1990); *Okl.Bar Ass'n v. Stubblefield,* Okl., 766 P.2d 979, 982 (1988); *State ex rel. Okl. Bar Ass'n v. Cantrell,* Okl., 734 P.2d 1292, 1293 (1987); *Raskin, supra* note 16 at 265–266; *State ex rel. Oklahoma Bar Ass'n v. Foster,* Okl., 454 P.2d 654, 656 (1969); *State ex rel. Oklahoma Bar Ass'n v. Brandon,* Okl., 450 P.2d 824, 827 (1969).

18. *State ex rel. Okl. Bar Ass'n v. Bolton,* Okl., 880 P.2d 339, 345 (1994); *Raskin, supra* note 16 at 265; *State ex rel. Oklahoma Bar Ass'n v. Hensley,* Okl., 560 P.2d 567, 568 (1977).

19. *Bolton, supra* note 18 at 340.

20. Leigh explained to the PRT that he received $3,000 in legal fees and $200 in costs (Mays paid $1,000 of this amount and Deain paid the remaining $2,200).

21. Leigh assigned his judgment to a collection agency.

22. *See supra* notes 7 and 8.

The PRT imposed against respondent a monetary sanction, which was apparently intended to adjust the rights of the parties *vis-a-vis* one another. Its sanction cannot be termed restitution *stricto sensu*.[23] The latter contemplates restoring the person to his (or her) former position. In *Bar disciplinary cases, restitution*[24] generally refers to (a) a monetary payment by the respondent lawyer to the former client for the money, interest or thing of value that has been paid or entrusted to the lawyer by a client (or third party) in the course of the representation,[25] (b) a refund of unearned fees[26] or (c) a compensatory payment for the harm respondent has caused.[27] It is highly improper to adjust private claims in a disciplinary case by resort to "restitution" when the rights of the parties *vis-a-vis* one another are to be settled in pending civil litigation. Although the exact nature of the compensatory-payment sanction is not shown in the PRT report, it appears to be part and parcel of the controversy respondent and his client were then in process of litigating. Because the PRT's monetary-payment sanction cannot be surgically severed from those claims, now *sub judice*, we hold that it is an impermissible part of the controversy and of the disciplinary sanction.

Moreover, it would indeed be a denial of due process to saddle respondent with a compensatory sanction that is *unrelated* to and *unsupported* by any evidence.[28] That

---

**23.** Black's Law Dictionary defines the term "restitution" as an "equitable remedy under which a person is restored to his or her original position prior to loss or injury, or placed in the position he or she would have been, had the breach not occurred. Act of restoring; restoration; restoration of anything to its rightful owner; the act of making good or giving equivalent for any loss, damage or injury; and indemnification. *State v. Barnett,* 110 Vt. 221, 3 A.2d 521, 525, 526 (1939). Act of making good or giving an equivalent for or restoring something to the rightful owner. *Antoine v. McCaffery,* Mo.App., 335 S.W.2d 474, 489." *Id.* at 1313 (6th ed. 1990).

**24.** *See, e.g.,* Rule 11.4, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A (pertaining to the standard of proof for reinstatement), which states that [i]f applicable, *restitution,* or the lack thereof, by the applicant to an *injured party* will be taken into consideration by the Trial Panel on an application for reinstatement." (Emphasis added.)

**25.** *See, e.g., State ex rel. Okl. Bar Ass'n v. Miskovsky,* Okl., 824 P.2d 1090 (1991) (respondent was required to pay restitution of $466.25, which represented client funds that he was unauthorized to retain as a fee); *State ex rel. Okl. Bar Assn. v. Stephenson,* Okl., 798 P.2d 1078, 1080 (1990) (respondent was required to pay restitution of $40.00 for client funds in his possession); *State ex rel. Okl. Bar Ass'n v. Payne,* Okl., 748 P.2d 989, 990 (1988) (respondent was required to pay restitution of $1,500 for a back child support payment that was deposited into his business account).

**26.** *See, e.g., State ex rel. Okl. Bar Ass'n v. Watson,* Okl., 897 P.2d 246, 255–256 (1994) (respondent was required to pay as a condition of his reinstatement a fee refund of $16,643.24); *State ex rel. Okl. Bar Ass'n v. Whiteley,* Okl., 792 P.2d 1174, 1176 (1990) (respondent was required to refund a $1,000 fee with interest); *State ex rel.*

*Okl. Bar Ass'n v. Garvin,* Okl., 777 P.2d 926, 928 (1989) (respondent was required to refund a $5,000 retainer fee).

**27.** *See in this connection State ex rel. Okl. Bar Ass'n v. Thomas,* Okl., 886 P.2d 477, 479–480 (1994), where the respondent allowed the statute of limitations to run on his client's case. The PRT's recommendation of restitution for the harm caused by the lawyer's neglect was rejected because (a) it was difficult to determine an appropriate amount of restitution and (b) the clients had other avenues open to them for recovery of their losses. There, we noted that *restitution is generally ordered only when the amount is readily determinable* (citing *State ex rel. Okl. Bar Ass'n v. Perkins,* Okl., 827 P.2d 168 (1992)).

**28.** The U.S. Supreme Court has condemned judicial process that has no basis in proof. See *Thompson v. City of Louisville,* 362 U.S. 199, 204, 80 S.Ct. 624, 628, 4 L.Ed.2d 654 (1960); *Douglas v. Buder,* 412 U.S. 430, 432, 93 S.Ct. 2199, 2200, 37 L.Ed.2d 52 (1973). *See in this connection Felber v. Association of the Bar of the City of New York,* 386 U.S. 1005, 87 S.Ct. 1343, 18 L.Ed.2d 435 (1967) (Black, J., dissenting from denial of certiorari). There, a lawyer was automatically disbarred solely on the basis of a conviction for larceny and forgery. When the conviction was held void and set aside by an appellate court, the lawyer applied for and was denied reinstatement. He raised the issue "whether the State, having disbarred [him] automatically on the basis of a conviction for crime subsequently voided, can perpetuate his disbarment on the basis of the identical evidence offered to convict him." Citing *Thompson, supra,* and *Konigsberg v. State Bar,* 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957), Justice Black opines that "the moment petitioner's conviction was reversed, his continued disbarment was supported by absolutely no evidence. This was a

approach would transform the disciplinary process into a constitutionally impermissible punitive sanction. According to the record, Leigh had on hand no unearned money of the client. There is no paper trail in the transcript of an effort by the Bar to adjust, in monetary terms, the amount of harm respondent's actions may have caused his client; neither is there any reference to a refund of some unearned attorney's fee.

■ We cannot give the court's imprimatur to the PRT-recommended compensatory sanction. *There is no record support either for a fee refund claim, restitution of client funds or a monetary sanction for harm caused by respondent.*

On *de novo* review of the record, we (a) *find* the one-count complaint amply supported by clear and convincing record proof,[29] (b) *declare* the respondent's conduct to have violated Rules 1.5, 4.1, 7.1, 7.4, 7.5 and 8.4(c),[30] and (c) *conclude* that a suspension from the practice of law for 180 days with payment of costs constitutes the proper discipline to be imposed. Within thirty days of the date of this opinion Leigh shall pay the costs of this proceeding in the amount of $540.54.

RESPONDENT SHALL STAND SUSPENDED FROM THE PRACTICE OF LAW FOR A PERIOD OF 180 DAYS FROM THE DAY THIS OPINION BECOMES FINAL; COSTS OF THIS DISCIPLINARY PROSECUTION SHALL BE PROMPTLY PAID IN FULL AS A PRECONDITION FOR RESPONDENT'S REINSTATEMENT.

KAUGER, V.C.J., and LAVENDER, HARGRAVE and WATT, JJ., concur.

clear deprivation of due process of law and made the disbarment at that time as void as the criminal conviction." *Id.*, 386 U.S. at 1006, 87 S.Ct. at 1344.

29. Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, provides in pertinent part:

"... (c) To warrant a finding against the respondent in a contested case, the charge or charges must be established by clear and convincing evidence, and at least two of the members of the Trial Panel must concur in the findings."

WILSON, C.J., and HODGES and SUMMERS, JJ., concur in part and dissent in part.

SIMMS, J., dissents.

SIMMS, Justice, dissenting.

I would suspend the respondent for two years and one day.

SUMMERS, Justice, with whom WILSON, Chief Justice, and HODGES, Justice, join, concurring in part and dissenting in part.

I concur in vacation of the compensation-payment sanction; I would suspend respondent for 120 days, as recommended by the PRT.

*See State ex rel. Oklahoma Bar Ass'n v. Farrant,* Okl., 867 P.2d 1279, 1283 (1994); *State ex rel. Oklahoma Bar Ass'n v. Gasaway,* Okl., 810 P.2d 826, 830 (1991); *State ex rel. Oklahoma Bar Ass'n v. Braswell,* Okl., 663 P.2d 1228, 1232 (1983). For a discussion of the clear-and-convincing standard of proof, see *Addington v. Texas,* 441 U.S. 418, 424–425, 431–432, 99 S.Ct. 1804, 1808–1809, 1812–1813, 60 L.Ed.2d 323 (1979) (in civil commitment proceedings a clear-and-convincing standard of proof is required to meet due process demands).

30. For the pertinent terms of these rules, see *supra* note 9.