1999 OK 62

**STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Richard STUTSMAN, Respondent.**

**OBAD No. 1357.**
**SCBD No. 4345.**

Supreme Court of Oklahoma.

June 29, 1999.

---

**46.** Title 14A O.S.1991 § 1–102, see note 38, supra.

Allen J. Welch, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma for Complainant.

Joseph R. Farris, J. David Mustain, Jody R. Nathan, Feldman, Franden, Woodard & Farris, Tulsa, Oklahoma and Gene Stipe, John M. Thetford, Stipe Law Firm, Tulsa, Oklahoma for Respondent.

OPALA, J.

¶ 1 In this disciplinary proceeding against a lawyer, the issues to be decided are: (1) Does the record submitted for our examination provide sufficient evidence for a mean-

ingful *de novo* consideration of the complaint's disposition?[1] and (2) Is a one-year suspension an appropriate disciplinary sanction for respondent's breach of professional ethics? We answer both questions in the affirmative.

## I

### INTRODUCTION TO THE RECORD

¶ 2 The Oklahoma Bar Association [Bar] charged Richard Stutsman [Stutsman or Respondent], a licensed lawyer, with four counts of professional misconduct.[2] The Bar later amended its complaint, charging respondent with only two of the counts.[3] The pretrial order, which eliminated all but *one count*, consists of stipulated facts, conclusions of law and agreed factors to be considered in mitigation of the charges. Left unresolved by the parties' stipulations was the discipline to be recommended. The Bar announced at the hearing before the Professional Responsibility Tribunal [trial panel or PRT] that it would prosecute only one count—that which charges respondent with misappropriation of fees from his former law firm. *Respondent admitted to having violated Rules 1.15(b)[4] and 8.4(c),[5] Oklahoma Rules of Professional*

*Conduct [ORPC].* At the end of the hearing, the trial panel directed the parties to offer a brief suggesting the discipline to be visited.

¶ 3 Following receipt of the parties' briefs and upon consideration of the briefs, the stipulations, and the testimony on file, the trial panel issued a report with its findings of fact and conclusions of law together with a recommendation for discipline. In accord with the parties' stipulations, the PRT found that respondent had violated ORPC Rules 1.15(b) and 8.4(c). It recommended that Stutsman be suspended for one year and be required to pay the costs of this proceeding.

## II

### THE RECORD BEFORE THE COURT PROVIDES SUFFICIENT EVIDENCE FOR A MEANINGFUL *DE NOVO* CONSIDERATION OF ALL FACTS RELEVANT TO THIS PROCEEDING

¶ 4 In a bar disciplinary proceeding this court functions in an adjudicative capacity as a licensing authority vested with exclu-

---

1. The record consists of the pretrial order (which contains stipulated facts, agreed conclusions of law and agreed factors to be considered in mitigation of the charges), a transcript of the hearing held before the Professional Responsibility Tribunal, exhibits offered by both parties, which were admitted in evidence at that hearing, and the Report of the Professional Responsibility Tribunal.

   Identified herein are only those counsel for the parties *whose names appear on the briefs responding to this court's order of 28 August 1998.*

2. This bar disciplinary proceeding was commenced on 12 June 1998 by the filing of the Bar's complaint in accordance with the provisions of Rule 6 (*Formal Proceedings Before Supreme Court and Professional Responsibility Tribunal*), Rules Governing Disciplinary Proceedings [RGDP], 5 O.S.1991, Ch. 1, Ap. 1–A. The pertinent terms of RGDP Rule 6.1 are:

   ... The proceeding shall be initiated by a formal complaint prepared by the General Counsel, approved by the Commission, signed by the chairman or vice-chairman of the Commission, and filed with the Chief Justice of the Supreme Court....

   The Bar's June 12 complaint charged respondent with violating Rules 1.1, 1.15(b), 8.4(c) and

8.4(d), Oklahoma Rules of Professional Conduct [ORPC], 5 O.S.1991, Ch. 1, App. 3–A.

3. The Bar's 17 July 1998 amended complaint charged respondent with violating ORPC Rules 1.1, 1.15(b), and 8.4(c).

4. The pertinent terms of Rule 1.15(b), Oklahoma Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A, are:

   ... (b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property....

5. The terms of Rule 8.4(c), Oklahoma Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A, are:

   It is professional misconduct for a lawyer to:
   ...
   (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;....

sive original jurisdiction.[6] Its cognizance rests on constitutionally invested, nondelegable power to regulate the practice of law, which includes the licensure, ethics, and discipline of legal practitioners in this state.[7] Before deciding whether discipline is warranted and what sanction, if any, is to be imposed for the misconduct alleged, this court conducts a nondeferential, full-scale, *de novo* examination of all relevant facts,[8] in the course of which the recommendations of the trial panel are *neither* binding *nor* persuasive.[9] We are not guided by the standard-of-review criteria applicable in the context of corrective process on appeal or on certiorari, in which we may be compelled by mandated deference to leave undisturbed another tribunal's findings of fact.[10]

¶ 5 The court's duty can be discharged *only if* the trial panel submits a complete record of the proceedings.[11] Our initial task is to ascertain whether the record is sufficient to permit (a) an independent determination of the critical facts and (b) the crafting of appropriate discipline. The latter factor is to be guided by (1) what is consistent with the discipline imposed upon other lawyers who have committed similar acts of

professional misconduct and (2) what avoids the vice of visiting disparate treatment on the respondent-lawyer.[12]

¶ 6 *Stutsman has admitted, and the record sufficiently supports, the allegations of professional misconduct.* Upon consideration of the record we conclude that its contents are adequate for this court's *de novo* consideration of respondent's professional misconduct in contest.

### III

### THE LONE SURVIVING COUNT

¶ 7 The charges against respondent arise from his conversion (or, in a legal sense, commingling) of an attorney's fee received from Steven David [David]. While employed at Riggs, Abney, Neal, and Turpen [Riggs Abney or the firm], respondent provided legal services to David relating to a stock purchase. The stock of Summit Acceptance Corporation was held in trust. David and his sister were the trust beneficiaries. On 4 May 1994 David purchased her interest in the trust. Respondent represented David

6. *State ex rel. Okl. Bar Ass'n v. Leigh*, 1996 OK 37, ¶ 11, 914 P.2d 661, 666; *State ex rel. Okl. Bar Ass'n v. Eakin*, 1995 OK 106, ¶ 8, 914 P.2d 644, 647; *State ex rel. Okl. Bar Ass'n v. Bolton*, 1994 OK 53, ¶ 15, 880 P.2d 339, 344; *State ex rel. Okl. Bar Ass'n v. Donnelly*, 1992 OK 164, ¶ 11, 848 P.2d 543, 545; *State ex rel. Okl. Bar Ass'n v. Raskin*, 1982 OK 39, ¶ 11, 642 P.2d 262, 265; *In re Integration of State Bar of Oklahoma*, 185 Okl. 505, 95 P.2d 113, 115 (1939).

7. *Eakin, supra* note 6, at ¶ 8, at 648; *State ex rel. Okl. Bar Ass'n v. Downing*, 1990 OK 102, ¶ 12, 804 P.2d 1120, 1122–1123; *Raskin, supra* note 6, at ¶ 11, at 265–266.

8. *Leigh, supra* note 6, at ¶ 11, at 666; *Eakin, supra* note 6, at ¶ 8, at 647–648; *State ex rel. Okl. Bar Ass'n v. Lloyd*, 1990 OK 14, ¶ 8, 787 P.2d 855, 858; *State ex rel. Okl. Bar Ass'n v. Stubblefield*, 1988 OK 141, ¶ 7, 766 P.2d 979, 982; *State ex rel. Okl. Bar Ass'n v. Cantrell*, 1987 OK 17, ¶ 1, 734 P.2d 1292, 1293; *State ex rel. Okl. Bar Ass'n v. Brandon*, 1969 OK 28, ¶ 5, 450 P.2d 824, 827.

9. *Eakin, supra* note 6, at ¶ 8, at 648; *Raskin, supra* note 6, at ¶ 11, at 265. The court's range of options in a disciplinary proceeding is set forth in RGDP Rule 6.15(a):
(a) The Supreme Court may approve the Trial Panel's findings of fact or make its own inde-

pendent findings, impose discipline, dismiss the proceedings or take such other action as it deems appropriate.

10. *Bolton, supra* note 6, at ¶ 15, at 344; *Eakin, supra* note 6, at ¶ 8, at 648; *State ex rel. Okl. Bar Ass'n v. Farrant*, 1994 OK 13, ¶ 7, 867 P.2d 1279, 1284; *Levi v. Mississippi State Bar*, 436 So.2d 781, 782 (Miss.1983).

11. The terms of RGDP Rule 6.13 provide in part:
Within thirty (30) days after the conclusion of the hearing, the Trial Panel shall file with the Clerk of the Supreme Court a written report which shall contain the Trial Panel's findings of fact on all pertinent issues and conclusions of law (including a recommendation as to discipline, if such is found to be indicated, and a recommendation as to whether the costs of the investigation, record and proceedings should be imposed on the respondent), and shall be accompanied by all pleadings, a transcript of the proceeding, and all exhibits offered thereat. . . .

12. *Eakin, supra* note 6, at ¶ 9, at 648; *Bolton, supra* note 6, at ¶ 16, at 345; *State ex rel. Okl. Bar Ass'n v. Perceful*, 1990 OK 72, ¶ 5, 796 P.2d 627, 630.

during this closing transaction, which was finalized in the offices of the firm.

¶ 8 Employed by the firm since 1988, respondent became a partner in January 1993. The firm merged with another (the Robinson Lewis firm) effective 1 April 1994. Reconciliation of the different accounting and computer systems of the two firms delayed the actual merger until early August 1994. On May 3 or 4 of that year respondent notified the firm that he would be leaving at month's end. The following day, respondent gave written notice.

¶ 9 According to the Shareholder's Agreement the firm would purchase respondent's (shareholder's) share of the stock within thirty days of the notice. Upon withdrawal from the firm, partners were to receive their share of interest in the firm's furniture, fixtures, equipment and cash on hand. Respondent assumed that payment would be made within thirty (30) days of notice, as provided for in the Shareholder's Agreement, which disbursement would have been due on June 3 or June 4. According to respondent, the firm explained that he would not be paid in a timely manner. Respondent received his disbursement ($12,116.27) on August 18 or 19.

¶ 10 On 31 May 1994, after being informed that he would not receive his disbursement in a timely manner and *even before any payment from the firm was due*, respondent billed his client David on his own letterhead *for services performed while employed at the firm*. That billing, in the amount of $2,343.75, was concealed for nearly two years until it was uncovered during the course of

discovery in a malpractice lawsuit brought by David against the firm and respondent. On 6 June 1996, after respondent's actions had become known to the firm and before any grievance was filed, respondent tendered to the firm a money order for $2,343.75. One factor that appears to have prevented earlier detection of the payment to respondent is a credit that had been issued to the client's account for $2,995.94. This happened shortly before respondent's departure from the firm. *It is unknown who authorized that credit or why it was extended.* Moreover, respondent did not leave at the firm any paper trail of the billed services.

## IV

## MISHANDLING OF LAW FIRM FUNDS

¶ 11 The Bar has charged Stutsman with misappropriating an attorney's fee from his firm and concealing that fact in violation of ORPC Rules 1.15(b) and 8.4(c).[13]

¶ 12 Where money has been entrusted to an attorney for a specific purpose, it must be applied to that purpose. The lawyer may not avail himself of a counterclaim or set-off for fees by interposing demands to count against any client's money coming into his hands for such specific purpose.[14] We employ three different culpability standards when evaluating mishandling of client funds:[15] 1) *commingling*, which takes place when client money is intermixed with the attorney's personal funds; 2) *simple conversion*, which occurs when a lawyer applies a client's money to a purpose other than that

**13.** For the pertinent text of *Rule 1.15(b)*, see *supra* note 4; for the pertinent text of *Rule 8.4(c)*, see *supra* note 5.

**14.** *State ex rel. Okl. Bar Ass'n v. Wallace*, 1998 OK 65, ¶ 22, 961 P.2d 818, 826 n. 22; *State ex rel. Okl. Bar Ass'n v. Wilkins*, 1995 OK 59, ¶ 17, 898 P.2d 147, 152 (respondent violated ORPC Rule 1.15(b) for failing to notify and remit payments made for his client's benefit); *State ex rel. Oklahoma Bar Ass'n v. Cummings*, 1993 OK 127, ¶ 26, 863 P.2d 1164, 1171 (when entrusted with money for a specific purpose a lawyer must not allow his claimed fee for services rendered to conflict with his duties as a fiduciary). In *State ex rel. Okl. Bar Ass'n v. Miskovsky*, 1990 OK 12, ¶ 6, 804 P.2d 434, 436–437, a lawyer held money for the specific purpose of preserving an oil and gas lease. When the lease ceased to exist, the lawyer claimed the money for his attorney's fee.

We dismissed the charge of a Rule 1.4(c) violation because it was unclear from the record whether the client had agreed to have those funds apply towards payment of an attorney's fee. *See also Wilkerson v. Olcott*, 212 So.2d 119, 121 (Fla.App. 4 Dist., 1968) (a fiduciary, be he an attorney or not, must account for and deliver over property or money of a beneficiary or client which has been entrusted for a specific purpose); *Wilkins v. Wilkins*, 144 Fla. 590, 198 So. 335, 336–337 (1940) (equity imposes a constructive trust where a trustee or other fiduciary has abused the confidence placed in him, and fails to account for entrusted funds).

**15.** These standards were set out in *State ex rel. Okl. Bar Ass'n v. Johnston*, 1993 OK 91, ¶ 21, 863 P.2d 1136, 1144; *Cummings, supra* note 14, at ¶ 23, at 1172.

for which it was entrusted to the attorney and 3) *misappropriation,* the most serious infraction, which involves theft by conversion or otherwise when an attorney purposefully deprives a client of money by way of deceit and fraud.[16] The degree of culpability ascends from the first to the last of these categories. Each must be proved by clear and convincing evidence.[17] A lawyer's mishandling of funds belonging to a law firm, where that lawyer is employed, is not to be treated differently from misappropriation or conversion of funds belonging to the lawyer's client.[18] In each case, the lawyer violates the basic professional duty of trust, not only as counsel but also as fiduciary.[19]

¶ 13 *Stutsman admits that he billed his client on his own letterhead for work that he did while working for Riggs Abney. By failing to report this money to the firm, Stutsman has commingled funds.*

¶ 14 On *de novo* consideration, we adopt the PRT's conclusion and hold that discipline is warranted for respondent's mishandling of funds.

## V

### A ONE–YEAR SUSPENSION IS AN APPROPRIATE SANCTION FOR RESPONDENT'S PAST PROFESSIONAL MISCONDUCT

¶ 15 The primary purpose for imposing professional discipline is not to punish the offender but to protect the public by inquiring into the offender's continued fitness to practice law.[20] Imposition of discipline is designed to foster these aims rather than to be a purely punitive measure imposed for a lawyer's misconduct. Mitigating circumstances may be considered in arriving at the assessment of appropriate measure of discipline.[21]

¶ 16 While the PRT recommends that respondent's license be suspended for one year and that the costs of these proceedings be assessed against him, the Bar suggests that respondent's misconduct warrants more severe discipline. It contends that the appropriate discipline is two years and one day. Stutsman urges that we visit a private reprimand or public censure.

¶ 17 As for mitigating factors, we are informed that respondent has been a member of the bar for eighteen years and has no record of prior discipline. He admitted his wrongdoing and expressed remorse. He has cooperated fully with the Bar and with the PRT throughout the course of the disciplinary proceedings. *Once his conversion of the funds was discovered, respondent tendered to the firm full reimbursement before a grievance was filed.*[22]

16. A lawyer found guilty of intentionally inflicting grave economic harm in mishandling clients' funds is deemed to have committed the most grievous degree of offense. *Donnelly, supra* note 6 at 548. A finding that the attorney did so intentionally, regardless of exceptional mitigation factors, (*Raskin, supra* note 6), mandates the imposition of harsh discipline—disbarment. See RGDP Rule 1.4(c); *State ex rel. Oklahoma Bar Assn. v. Miskovsky,* 1991 OK 88, 824 P.2d 1090, 1101 n. 19.

17. The terms of Rule 6.12(c), Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch.1, App.1–A, are:

(c) To warrant a finding against the respondent in a contested case, the charge or charges must be established by clear and convincing evidence,....

18. *See, e.g., Matter of Disciplinary Proceedings Against Olson,* 216 Wis.2d 483, 484–85, 574 N.W.2d 245 (1998) (a lawyer's professional misconduct in using for his personal purposes funds of his law firm warranted a one-year suspension); *Matter of Disciplinary Proceedings Against Casey,* 174 Wis.2d 341, 342, 496 N.W.2d 94, 95 (1993)(a lawyer's appropriation of his client's retainer to his own use, rather than giving it to the law firm where he is employed, is professional misconduct warranting a 60–day suspension).

19. *Olson, supra* note 18 at 484–85; *Casey, supra* note 18 at 95.

20. *Wallace, supra* note 14, at ¶ 29, at 826; *Bolton, supra* note 6, at ¶ 12, at 602; *Donnelly, supra* note 6, at ¶ 14, at 546; *State ex rel. Okl. Bar Ass'n v. Colston,* 1989 OK 74, ¶ 20, 777 P.2d 920, 925; *State ex rel. Okl. Bar Ass'n v. Moss,* 1983 OK 104, ¶ 12, 682 P.2d 205, 207; *State ex rel. Oklahoma Bar Ass'n v. Harlton,* 1983 OK 87, 669 P.2d 774, 777; *Raskin, supra* note 6 at 267.

21. *Raskin, supra* note 6 at 267.

¶ 18 Stutsman's professional misconduct stems from one incident. Upon *de novo* review, the court finds clear and convincing evidence that respondent committed the violations charged. Following the PRT's recommendation, the court orders that respondent's license to practice law be suspended for one year and directs that he pay the costs of this proceeding in the sum of $910.41.

¶ 19 RESPONDENT'S LICENSE TO PRACTICE LAW IS ORDERED SUSPENDED FOR A PERIOD OF ONE YEAR AND HE IS DIRECTED TO PAY THE COSTS OF THIS PROCEEDING, WHICH SHALL BE DUE NOT LATER THAN NINETY DAYS AFTER THIS OPINION BECOMES FINAL.

¶ 20 SUMMERS, C.J., HARGRAVE, V.C.J., and LAVENDER, HODGES and KAUGER, JJ., concur;

¶ 21 SIMMS, ALMA WILSON and WATT, JJ., concur in part and dissent in part.

SIMMS, J., with whom WATT, J., joins, concurring in part and dissenting in part.

¶ 1 I concur in discipline but would administer a more severe punishment.

22. The use of lenient discipline for the purpose of encouraging restitution cannot be sanctioned because it conflicts with the paramount goal of preserving public confidence in the entire bar. *Raskin, supra* note 6 at 267.