2008 OK 82

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Stephen E. LILE, Respondent.**

**SCBD No. 5191.**

Supreme Court of Oklahoma.

Sept. 16, 2008.

☞11(4)

Dan Murdock, General Counsel, Loraine Farabow, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

Nicholas D. Garrett, Mark Ashton, for Respondent.

PER CURIAM.

¶1 The Oklahoma Bar Association (Bar Association), the complainant, filed a complaint against Stephen E. Lile, the respondent, alleging specific acts constituting professional misconduct in violation of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2001, ch. 1, app. 3–A, Rule 8.4. Such a violation is grounds for disciplinary action pursuant to Rule 1, § 1.3 of the Rules Governing Disciplinary Proceedings, 5 O.S.2001, ch. 1, app. 1–A. The Bar Association recommended, and the respondent agreed, that a public reprimand was the appropriate discipline. The Professional Responsibility Tribunal recommends that the respondent be suspended for a period of two years and one day, and assessed the costs of this proceeding.

## I. FACTS

¶2 The parties filed joint stipulations regarding the facts. The Tribunal found that the joint stipulations as amended at the hearing were accurate and adopted them. Additional facts taken from the testimony of the witnesses before the Tribunal were also incorporated into their findings. These findings are as follows.

¶3 At some time before the acts alleged in the Complaint, the respondent experienced marital problems. During that time he renewed his relationship with Dawn Lukasic. She told him they had a son named Loren W., about whom the respondent had no previous knowledge. The young man had fourteen felony charges pending in Grady, Comanche and Stephens Counties. These felony charges included two counts involving drugs, numerous burglary counts, and two counts of concealing stolen property. The respondent retained three attorneys to represent his son, and he took an active role in his son's criminal cases through multiple communications with defense counsel and various Department of Corrections employees. From June 24, 2004, to October 29, 2004, he traveled to the facilities where his son was incarcerated, almost on a weekly basis, at the taxpayer's expense. The real purpose of the trips was to either visit his incarcerated son or to take care of legal and other issues involved in his son's incarceration. On some of the trips he was accompanied by Dawn Lukasic. He filed travel claims seeking reimbursement for these personal trips, claiming he attended project conferences, projects, or meetings of the Regi-

mented Inmate Discipline (RID) Program offered by the Department of Corrections. But there were no RID project conferences, projects, or meetings on the dates for which he filed travel claims. These travel claims were signed by the respondent under oath and under penalty of perjury.

¶ 4 The Tribunal also found that the respondent contacted one of the three judges who would be sentencing his son. In another county, he spoke with defense counsel between 35 and 50 times about his son's sentencing there. He caused pressure to be applied to another sentencing judge and involved himself in the sentencing process by requesting that RID employees testify on his son's behalf. The District Attorney also spoke with the sentencing judge regarding the respondent's son. After his son's formal sentencing, the respondent, in a letter on letterhead of the Court of Criminal Appeals, criticized the probation officer to a member of the Board of Corrections because the officer wrote an unfavorable report in his son's case.

¶ 5 The respondent hired Dawn Lukasic as his Administrative Assistant in August 2004, and she assisted him in remodeling his office. On August 25, 2004, he began submitting Expense Claim reimbursement requests. The claim forms were for purchases made by Dawn Lukasic and her daughter. Some of those claims were for personal items unrelated to the remodeling. These claims, also signed under oath, were false because the respondent was not legally entitled to reimbursement for them.

¶ 6 The Lawton police arrested Dawn Lukasic on December 16, 2004, after stopping and searching her car, with her permission, in a known drug area of Lawton, Oklahoma. They had observed her make an illegal stop and pick up one of the two male passengers she had in her car at the time the police stopped her. Both of her passengers were known to the officers and had lengthy criminal records. The officers located a pill bottle on the driver's side floor area where she was observed sitting and reaching down between her legs toward the floorboard. The pill bottle contained a plastic bag with a substance that subsequently tested positive for amphetamine. Dawn Lukasic advised the arresting officers that she was employed by the respondent and furnished them with his personal cell phone number and his home phone number. The police were able to reach him immediately and inform him of the situation. When the police contacted the District Attorney, he advised them he had been contacted by the respondent regarding the incident. He instructed the police to release Dawn Lukasic, but they declined. The District Attorney telephoned later to tell the police that a Lawton attorney would accept responsibility for her release. The District Attorney ultimately declined to file charges because he did not believe Dawn Lukasic's dominion and control of the illegal substance could be established. The respondent stipulated that he had created the perception of undue influence on the District Attorney to decline prosecution.

## II. Rule 8.4 Misconduct

¶ 7 Rule 8.4 of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2001, app. 3–A, provides:

"It is professional misconduct for a lawyer to:

"(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\* \* \*

"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

"(d) engage in conduct that is prejudicial to the administration of justice...." [1]

¶ 8 The Professional Responsibility Tribunal made the following findings. As to Count I, the respondent admitted that he submitted requests for personal reimbursement of expenses that should not have been submitted and should not have been paid by the State of Oklahoma, and that this misconduct violated Rule 8.4(a), and (c) in that the

---

1. Rule 8.4 was amended January 1, 2008, 2007 OK 22, 171 P.3d 780. Subsections (a)(c) and (d) were unaffected by the revision.

respondent's conduct involved misrepresentations, fraud and deceit.

¶ 9 In Count II, the Tribunal found that the respondent admitted that the travel claims he submitted were inappropriate, that the respondent's conduct involved misrepresentations when he asserted that his travel was for official court business. The travel was personal, and the claims should not have been submitted. The Tribunal concludes that this conduct violated Rule 8.4(a) and (c) of the ORPC.

 ¶ 10 In Count III, the Tribunal found that the respondent had discredited the legal profession by his attempts to influence the prosecution of the criminal cases of Loren W., which was an abuse of his position of his office as a judge of the Oklahoma Court of Criminal Appeals. The Tribunal concluded that this conduct violated Rule 8.4(a) and (d).

¶ 11 In Count IV, the Tribunal found that the respondent's actions undermined public confidence in the integrity of the judicial system and discredited the legal profession as a whole by interfering with Loren W.'s incarceration, which was an abuse of the respondent's position as a judge of the Oklahoma Court of Criminal Appeals. The Tribunal concluded these actions constituted grounds for professional discipline.

 ¶ 12 In Count V, the Tribunal found that the respondent had discredited the legal profession by interfering with and influencing Dawn Lukasic's drug arrest, resulting in the declining of prosecution by the District Attorney. The respondent's conduct was an abuse of his office as a judge of the Court of Criminal Appeals and violated Rule 8.4(a) and (d) of the ORPC.

¶ 13 The Tribunal found that the respondent's multiple violations of Rule 8.4 subjected the respondent to discipline pursuant to Rule 1 of the Rules Governing Disciplinary Proceedings, § 1.3, 5 O.S.2001, ch. 1, app. 1–A. That rule provides:

"The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be

grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline."

 ¶ 14 The Supreme Court of Oklahoma possesses original and exclusive jurisdiction in discipline of all persons licensed to practice law in Oklahoma. Rules Governing Disciplinary Proceedings, 5 O.S.2001, app. 1–A, Rule 1, § 1.1. The inherent power of this Court to regulate the conduct of lawyers is not subject to delegation to committees and representatives, even though these agencies may be utilized for investigation or fact-finding purposes and to make recommendations. *In re Integration of State Bar of Oklahoma,* 1939 OK 378, ¶ 10, 95 P.2d 113, 115, citing *In re Integration of Nebraska State Bar Association,* 133 Neb. 283, 275 N.W. 265. Accordingly, this Court is not bound by the stipulations of the parties, nor by the Professional Responsibility Tribunal's findings of fact and misconduct or its recommendations of discipline. *State ex rel. Oklahoma Bar Association v. Beasley,* 2006 OK 49, ¶ 8, 142 P.3d 410, 413.

¶ 15 The record reveals that the respondent and the Bar Association stipulated that the respondent's violations of Rule 8.4(c) were misrepresentations, not fraud. We agree with the findings of fact of the Tribunal, and the conclusion that the respondent has multiple violations of Rule 8.4 of the ORPC and is subject to discipline pursuant to Rule 1, § 1.3 of the RGDP. We must now determine the appropriate discipline.

### III. Mitigation

¶ 16 In mitigation, the Tribunal found that the respondent had been cooperative throughout the investigation and disciplinary proceedings. He has never been disciplined for professional or judicial misconduct in over thirty-three years of practice. He has been a community leader in Lawton, Oklahoma, been active in various charitable fundraising events, and served as a member of the board of directors of various nonprofit corporations. During the time the respondent committed the acts described in the five Counts, he

experienced stress and turmoil because of his separation from his wife and over the well being of his three minor children. His marriage ultimately resulted in divorce and he currently has custody of the three minor children. The Tribunal found that the respondent suffered from depression during the relevant time involved in this grievance, but that no nexus was established between the depression and his conduct. The respondent voluntarily reimbursed the State of Oklahoma in the amount of $1,560.43 on December 2, 2004, for remodeling claims, which included actual expenses and improperly submitted items in the remodeling of his state office. He also voluntarily reimbursed the State of Oklahoma in the amount of $1,523.64 on January 6, 2005, for the bogus travel expenses claims related to his son's criminal cases. The respondent resigned his position as a member of the Court of Criminal Appeals effective March 1, 2005. The Bar Complaint against the respondent was not filed with the Office of the Chief Justice until May 30, 2006. Referring to all Counts, the respondent advised the Tribunal that he was regretful of his conduct, remorseful, and apologetic for the embarrassment to the Court and harm to the profession.

¶ 17 We add that the record reveals the respondent, during the time of the events resulting in the Counts against him, discovered he had an adult son who had several criminal charges against him. He testified that he had felt guilt over the discovery. The stipulated facts in mitigation include that the respondent's voluntary resignation from the Court of Criminal Appeals resulted in his having to return to private practice and begin his legal career with relatively no income. No criminal charges were ever filed against the respondent by the Attorney General's Office following their investigation.

¶ 18 The transcript of the hearing reveals that three lawyers testified regarding the respondent's competency as a prosecutor, district judge and private practitioner of law. Their testimony was that the respondent was very professional, very competent, and very approachable. He was praised for his ability as a prosecutor and his competency in his current practice of law. One lawyer, who had practiced since 1965, testified that he had a high degree of respect for the respondent's legal abilities in both the criminal and civil practice of law.

¶ 19 Statements from two practicing attorneys and one nonpracticing attorney who owns an abstract business in Lawton were admitted as exhibits. All three favorably recommended the respondent, describing his past and current competency in the practice of law, and his judicial competency while serving on the trial bench in Comanche County. One stated his belief that the circumstances and activities giving rise to the disciplinary proceedings were isolated occurrences which were not representative of the respondent's character and ability to practice law in an effective and professional manner.

## IV. Discipline

¶ 20 The Bar Association recommended public censure, with an assessment of costs, based on the mitigating factors presented in the Joint Stipulations, especially the respondent's cooperation during the Bar's investigation, and his acknowledgment of wrongdoing and expression of sincere remorse as evidenced by his stipulations. The Bar's Brief–in–Chief added that the recommendation was also based on the fact that the primary goal of disciplinary proceedings is not to punish the offending attorney but to protect the public by inquiring into the attorney's current fitness to practice law, citing *State ex rel. Oklahoma Bar Ass'n v. Taylor,* 2003 OK 56, ¶ 22, 71 P.3d 18, 29.

¶ 21 The Bar asserts that there is no Oklahoma precedent directly on point, but submits three cases involving discipline of judges. In *State ex rel. Oklahoma Bar Ass'n v. Eakin,* 1995 OK 106, 914 P.2d 644, this Court found that a former associate district judge engaged in extended ex parte communications with a litigant about material components of the merits of a pending proceeding while the respondent served as a judge presiding over that litigant's case. Two other counts charged against that respondent were found not to have been proven by clear and convincing evidence. The Court suspended the respondent from practice for one year and ordered payment of costs.

¶ 22 In *State ex rel. Oklahoma Bar Ass'n v. Haworth*, 1979 OK 34, 593 P.2d 765, the Court on the Judiciary removed the respondent from his office. The trial authority found violations existed in three of four counts against the respondent, concluding that (1) he had tampered with a jury list by substituting names of five individuals provided to him to be members of the jury panel in place of five who were drawn as members of the panel; (2) that he had operated a loan business from his chambers using court staff and public facilities; and (3) that he had entered into an illegal agreement in which he provided lenient and special treatment to a convicted felon, in exchange for which the felon's father campaigned for the district attorney, who was subsequently reelected by a narrow margin. This Court did not find the respondent's conduct regarding Count 2 to be prejudicial to the administration of justice as there was no allegation or evidence of fraud or dishonesty. Under Counts 1 and 3 the trial authority recommended disbarment, but acknowledged that suspension for two years would be acceptable. This Court suspended the respondent from the practice of law for two years.[2]

¶ 23 In *State ex rel. Oklahoma Bar Ass'n v. James*, 1969 OK 119, 463 P.2d 972, a county judge on two occasions solicited bribes from an attorney. The Trial Authority recommended that the respondent be disbarred. After reviewing the facts against the respondent, this Court agreed and disbarred the respondent.

¶ 24 In an Indiana bar matter, cited in the Oklahoma Bar Association's Brief–in–Chief, a judge was disbarred for knowingly presenting fraudulent receipts for reimbursement for attending conferences, some of which were complete fabrications. There were also mitigating factors that the Supreme Court of Indiana determined did not excuse the behavior, which that court characterized as egregious, felonious misconduct. *In the Matter of Hughes*, 640 N.E.2d 1065 (1994).

¶ 25 The Professional Responsibility Tribunal, in its recommendation, cited *State ex rel. Oklahoma Bar Ass'n v. Maddox*, 2006 OK 95, 152 P.3d 204, to support its decision recommending a two year and one day suspension of the respondent. In Maddox, the respondent resigned from his office as District Attorney during an ongoing investigation regarding his use of a state-owned automobile and his submission of travel claims. He admitted that he filed claims for mileage reimbursement from the state after travel by the vehicle owned by the state, and that the funds he received were improper and unlawful. He had pleaded guilty to one count of embezzlement by a public official and received a deferred sentence. He was placed on unsupervised probation for two years, and was disqualified from holding public office in the State of Oklahoma. That respondent had not previously been disciplined. This Court suspended his license to practice law for two years, and ordered that he pay costs.

¶ 26 The respondent asserts that the recommendation of the Tribunal was disproportionate to the stipulated facts and comes closer to punishment, contrary to the rule in bar cases that discipline is not for the purpose of punishing an offending lawyer, but to assess that lawyer's continued fitness to practice law. *State ex rel. Oklahoma Bar Ass'n v. Taylor*, 2003 OK 56, ¶ 22, 71 P.3d 18, 29.

### V. Conclusion

¶ 27 Notwithstanding the cooperation of the respondent with the Bar Association in its investigation and prosecution of this matter; the fact that the respondent voluntarily repaid the amounts improperly claimed; the respondent's many years with no previous disciplinary record; the domestic stresses of divorce, single-parenthood, and discovery of the fact that he had an adult son charged with multiple felonies; and the high recommendations from testifying lawyers of his current fitness in his practice of law, we find mitigation of discipline unwarranted. In view of the seriousness of the respondent's misconduct while serving in his position as a judge on the Oklahoma Court of Criminal Appeals, we reject the Bar Association's and Professional Responsibility Tribunal's recom-

---

2. In the case *In re Reinstatement Of Page*, 2004 OK 49, ¶¶ 17, 18, 94 P.3d 80, 86, this Court described the discipline in *Haworth* as being "seemingly lenient" and declined to follow it.

mendations and find, under these facts, that the respondent should be disbarred from the practice of law and assessed the costs of these proceedings in the amount of $892.53.

¶ 28 THE RESPONDENT IS DISBARRED FROM THE PRACTICE OF LAW TO BEGIN ON THE DAY THIS OPINION IS FINAL; RESPONDENT IS ORDERED TO PAY THE COSTS OF THIS PROCEEDING IN THE AMOUNT OF $892.53 WITHIN NINETY DAYS AFTER THIS OPINION IS FINAL.

¶ 29 WINCHESTER, C.J., EDMONDSON, V.C.J., KAUGER, WATT, TAYLOR, COLBERT, REIF, JJ., concur.

¶ 30 HARGRAVE, OPALA, JJ., disqualified.