2008 OK 91

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Richard F. BERGER, Respondent.**

**SCBD No. 5082, OBAD No. 1665.**

Supreme Court of Oklahoma.

Oct. 7, 2008.

Rehearing Denied Dec. 15, 2008.

Janis Hubbard, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

Richard F. Berger, Pro Se, Derry, NH, for Respondent.

EDMONDSON, V.C.J.

¶1 The Oklahoma Bar Association (OBA) charged respondent, Richard F. Berger, with one count of neglect of a client matter and misrepresentation of such to the client and to the Bar Association, in violation of Rules 1.1, 1.3, 1.4, 3.2, 8.1 and 8.4(c), of the Rules of Professional Conduct, (ORPC), 5 O.S.1991 Ch. 1, App. 3A and Rules 1.3 and 5.2 of the Rules Governing Disciplinary Proceedings, 5 O.S.1991 Ch. 1, App. 1–A.[1] The proceeding was brought pursuant to Rule 6, RGDP and hearing was held before a trial panel of the Professional Responsibility Tribunal.

¶2 The panel issued its report of findings of fact and conclusions of law on September 16, 2005, and unanimously found, based on the parties' joint stipulation of certain facts,

---

1. The terms of Rules 1.1, 1.3, 1.4, 3.2, 8.1 and 8.4(c), of the Rules of Professional Conduct, (ORPC), 5 O.S.1991 Ch. 1, App. 3A and Rules 1.3 and 5.2 of the Rules Governing Disciplinary Proceedings, 5 O.S.1991 Ch. 1, App. 1–A, provide: "Rule 1.1. **Competence** A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." "Rule 1.3. **Diligence** A lawyer shall act with reasonable diligence and promptness in representing a client." "Rule 1.4. **Communication** (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information. (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." "Rule 3.2 **Expediting Litigation** A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." "Rule 8.1 **Bar Admission and Disciplinary Matters** ... [A] lawyer ... in connection with a disciplinary matter, shall not: (a) knowingly make a false statement of material fact; or (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to **a lawful demand for information** ..." "Rule 8.4(c) **Misconduct** ... It is professional misconduct for a lawyer to: ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation ...". The pertinent terms of RGDP 1.3 provide: "The commission by any lawyer of any act contrary to prescribed standards of conduct ... which would reasonably be found to bring discredit upon the legal profession shall be grounds for disciplinary action ..." "RGDP 5.2 **Investigations** (provides in pertinent part) ... [T]he lawyer ... shall thereafter make a written response [to the grievance] which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct.... Deliberate misrepresentation in such response shall itself be grounds for discipline."

exhibits and testimony by respondent and an investigator for the Oklahoma Bar Association, that the alleged violations of ethical rules charged in the complaint were established by clear and convincing evidence as required by Rule 6.12, RGDP, and constituted grounds for professional discipline. The panel recommended respondent be suspended from the practice of law for two years and one day.

## COUNT I

¶3 The single count is predicated on a grievance by Gary Motley, owner of RV Repair, against respondent, an Oklahoma City practitioner who represented Motley in a collection matter against the owner of an oilfield truck (Rosel) who had stopped payment on a check in the amount of $517.73 tendered to Mr. Motley for repair work he performed on the truck. Respondent and Mr. Motley were neighbors and respondent had represented him several times, mostly about collection matters. The essence of Mr. Motley's grievance is that even though he ultimately received the amount of money he was pursuing through respondent, he believes the funds respondent sent to him did not originate with Rosel, but were instead from respondent's own pocket. Mr. Motley contended that he had been unable to learn the truth of this matter from respondent.

¶4 Mr. Motley stated he contacted respondent in 2002 about filing a suit to collect the money Rosel owed him, and respondent later assured him things were progressing and the money should be received soon. Mr. Motley said respondent was extremely hard to contact and he did not respond to numerous messages left for him. Motley stated he did not receive a copy of a demand letter to Rosel, and in early 2004 he requested the case number from respondent, but did not receive it. In March, 2004, Mr. Motley received a check in the mail for $369.13 with no explanation. It was drawn on respondent's business account and had a notation reading "partial-collection Rosel." In April 2004, Motley received another check drawn on the same account; this check was in the amount of $130.87, and had some notations including a case number, "CS–2003–2071."

¶5 Mr. Motley requested a copy of the judgment from respondent, and subsequently received a fax from respondent of an unreadable copy of a purported journal entry. After requesting a clear copy he received other copies of the document which reflected filing in Oklahoma County District Court, but they did not have a proper filing stamp and they had different prefix letters and years as well as transposed case numbers which do not comport to the parties or any journal entry issued in those case numbers in Oklahoma County or in any surrounding county.

¶6 Mr. Motley then hired another attorney, Mr. Brady, to try to clarify this matter, but Brady was also unable to get information from respondent. Respondent advised him in writing that he was represented by counsel, but would not reveal counsel's name. He stated that Rosel's debt had been collected in full, and sent a final check for $50.00 for Mr. Motley, but it was never negotiated. He asked Brady not to collect any costs or fees from Mr. Motley on respondent's behalf.

¶7 It is undisputed that Respondent had a heart attack in 2002 and he was subsequently hospitalized several times and unable to go to work for long periods of time. Due to continuing serious health problems, he began closing his practice in 2004 and was helped in doing so by three attorneys and their non-attorney staff. He closed his practice in May 2004 and moved to New Hampshire where he still lives and does non-legal work for an insurance company. He has not practiced law since he left Oklahoma and he remains in poor health.

¶8 The Office of the General Counsel of the Oklahoma Bar Association wrote respondent and requested him to respond to the grievance. Respondent did timely respond by letter of April 19, 2005, in which he strongly implied that he had filed (or caused to be filed by the attorneys helping him) an action against Rosel on behalf of Motley. He stated a demand letter had been sent to Rosel, but that portion of "this small claims file" could not now be located. The matter, he said, had been "finally, fully and thankfully settled" and the two partial settlement checks ($369.13 & 130.87, totaling $500.00)

had been sent to Mr. Motley after respondent received money orders in those amounts. He explained that the staff had inadvertently placed the money orders, along with other checks, in his business account rather than his trust account, and he suggested the incorrect case number was a result of closing out his practice and might be an incorrect number or filed in the wrong county. Respondent stated that he was unable to provide copies of the letter he sent to Brady. With this response, respondent sent a cashier's check for $50.00 payable to Mr. Motley. Respondent advised that he had always thought the sum of money that Rosel owed Mr. Motley was $550.00.

¶ 9 The General Counsel's office then investigated the matter and determined the explanations presented by respondent were false and misleading. A search of numerous counties found no case filed by respondent on behalf of Mr. Motley against Rosel. Rosel advised the OBA that he was not aware of any suit being brought about this matter and that neither he nor his company had made any payments to respondent. The Office of General Counsel then wrote respondent again, advising him of these facts and asking him to supplement his response and provide proof of the existence of his case filed for Mr. Motley or to rethink his position as to what had taken place in this matter.

¶ 10 Respondent sent a supplemental response to the OBA on May 31, 2005, but it did not present proof that he had filed an action for Mr. Motley. Respondent stated he had discovered that his earlier statement to the Bar that the funds came from Rosel was wrong. He now knew, he said, that his source of that information, a staff person, had just been telling him "what he wanted to hear"—that the case was concluded—and respondent had then relayed that inaccurate information to the OBA. He had also discovered problems with the manner in which the staff had been making deposits, and had learned that the funds sent to Motley apparently were respondent's monies. Respondent acknowledged that he is responsible for any and all actions or inactions that occurred in his office, and stated that he therefore

would not name the person he thought made these errors and misstatements.

¶ 11 Respondent's testimony before the panel offered no new insight as to the events at issue. He said he thought he had asked one of the secretaries to file the case, but she obviously had not done so and had told him she had no memory of him asking her. He stated he did not create the false journal entry and he did not know the circumstances under which it was created. He said he apparently had made a mistake in the case number, and stated the other lawyers did not have the file. He stated he now is of the opinion that the case was not filed.

## STANDARD OF REVIEW

¶ 12 In bar disciplinary proceedings, this Court exercises exclusive original jurisdiction as a licensing court, not as a reviewing tribunal. RGDP 1.1; *State ex rel. Oklahoma Bar Ass'n v. Schraeder*, 2002 OK 51, 51 P.3d 570, 573. It is our ultimate responsibility to examine the record and assess the credibility and weight of the evidence in order to determine whether it clearly and convincingly establishes professional misconduct by respondent and, if so, what the appropriate discipline, if any, should be. *State ex rel. Oklahoma Bar Ass'n v. Stutsman*, 1999 OK 62, 990 P.2d 854, 858. In the exercise of our constitutionally invested and nondelegable power to regulate both the practice of law and legal practitioners, we are not bound by the recommendations of the PRT; they are advisory only, as our review is *de novo*. *State ex rel. Oklahoma Bar Association. v. Donnelly*, 1992 OK 164, 848 P.2d 543, 545–6

¶ 13 Upon consideration of the record, we adopt the conclusion of the PRT that the evidence clearly and convincingly showed respondent had violated the rules as charged in the Complaint, and we hold that discipline has been shown to be warranted. The panel found respondent had neglected his client's case and had failed to cooperate with his client as well as with his client's subsequent attorney and the OBA; that there was an absence of credibility in respondent's efforts to explain away his misconduct by shifting the responsibility to others; and that he had

failed to produce any facts, witnesses or documents which supported his position that others were responsible for this neglect. The panel believed respondent had not been forthcoming with the Bar about the facts and that it was he who had constructed the purported Journal Entry in an effort to cover up his neglect of his client.

## MITIGATION AND DISCIPLINE

¶ 14 The purpose of disciplinary proceedings is not to inflict punishment on the offending lawyer but to safeguard the interests of the public, the judiciary and the legal profession. *Donnelly,* 848 P.2d at 546. While one of this Court's responsibilities in the discipline process is to inquire into the lawyer's continued fitness to practice law, our other responsibilities include purification of the bar, instillation of confidence in the profession by the public and deterrence of commission of similar acts in the future by the offending lawyer and other members of the bar. *State ex rel. Oklahoma Bar Association v. Carpenter,* 1993 OK 86, 863 P.2d 1123, 1129.

¶ 15 Additionally, our responsibility requires us to craft discipline which is consistent with discipline imposed on other attorneys, and to avoid the vice of visiting disparate treatment on an offending lawyer. *Schraeder,* 51 P.3d at 574. We may consider mitigating circumstances in our assessment of the appropriate measure of discipline. *Schraeder,* 51 P.3d at 579.

¶ 16 We agree with respondent's contention that the panel's recommended suspension for two years and one day is too harsh under these circumstances. Respondent has been a member of the Oklahoma Bar Association since 1974 and has no history of disciplinary action. It is undisputed that at the time in question respondent was in very poor health. He had suffered a heart attack and afterwards he was hospitalized, unable to work and suffered short-term memory loss. He was divorced in 2004 shortly before he voluntarily closed his practice and left Oklahoma in May 2004. He remains in poor health. He has coronary artery disease and a congenital heart valve deformity which requires medication and causes him to tire easily, and he also has resulting problems with hemorrhaging blood vessels in his eye. It is likely he will never practice again and never return to Oklahoma due to worsening health conditions.

¶ 17 We find from the evidence that respondent's acts were not motivated by monetary gain. Also, it is undisputed that Mr. Motley was not economically harmed by respondent's neglect of his case; in fact, he received more money than he sought and he paid no costs or fees. In *Donnelly,* we recognized that a lawyer whose misconduct does not cause his client grave economic harm is a not a major, or serious, offender; and that while even minor behavior is not insignificant, it does not call for the imposition of harsh measures demanded by those most serious offenders who cause their clients reprehensible, significant, economic injury. There we found that the lawyer who was charged with lacking diligence and promptness in the representation of his client, not keeping his client informed, and deceiving a client as well as having failed to reveal his alcoholism to the PRT in a previous disciplinary hearing, could not be perceived as falling into the class of most serious offenders, and we imposed discipline of public reprimand and participation for one year in an Alcoholics Anonymous program.

¶ 18 This Court has imposed discipline ranging from public censure to two years' suspension on lawyers who have neglected their clients' cases. See *State ex rel. Oklahoma Bar Association v. Benefield,* 2002 OK 37, 51 P.3d 1198, 1200–1201. We have found public censure to be appropriate discipline where an attorney has neglected a client's case but has not committed affirmative acts of misconduct. *State ex rel. Oklahoma Bar Association v. Busch,* 1992 OK 68, 832 P.2d 845, *State ex rel. Oklahoma Bar Association v. Braswell,* 1983 OK 63, 663 P.2d 1228. We have also found public censure appropriate in some instances where attorneys have failed to respond to the Bar's request for response to grievances charging such neglect and the clients were not harmed by the failure to communicate. *State ex rel. Oklahoma Bar Association v. Simank,* 2001 OK 13, 19 P.3d

860 *State ex rel. Oklahoma Bar Association v. Kelley*, 2002 OK 10, 48 P.3d 777.

¶ 19 More severe discipline has been imposed where attorneys have committed affirmative acts of misconduct including misrepresentation. *State ex rel. Oklahoma Bar Association v. Schraeder*, 2002 OK 51, 51 P.3d 570 (thirty-day suspension for lawyer's failure to communicate with client and provide information about status of case, refusal to account for and restore unearned portion of unearned fees and failure to answer Bar's request for response to Bar complaint in case where record showed causal connection between lawyer's ethical lapses and professional burnout syndrome); *State ex rel. Oklahoma Bar Association v. Jaques*, 2000 OK 57, 11 P.3d 621 (thirty-day suspension for lawyer's forgery of notary's acknowledgment, failure to supervise law clerk who fabricated a court document and failure to diligently represent where acts did not cause clients appreciable harm); *State ex rel. Oklahoma Bar Association v. Rozin*, 1991 OK 132, 824 P.2d 1127 (suspension for sixty days and two-year probation where lawyer misrepresented to client that judge had signed order and lawyer subsequently manufactured the false document by "cutting and pasting"); *State ex rel. Oklahoma Bar Association v. Robertson*, 1980 OK 176, 620 P.2d 382 (ninety-day suspension found warranted for lawyer who, during time his partnership was being dismantled, failed to appear for docket date and default judgment was entered against client, lawyer did not attempt to vacate judgment, did not advise client of judgment and misrepresented true status of case to client's out-of-state lawyer); *State ex rel. Oklahoma Bar Association v. Thompson*, 1993 OK 144, 864 P.2d 339 (ninety-day suspension for lawyer who neglected client's case and made false statements to General Counsel of the Bar in connection with investigation of the grievance); *State ex rel. Oklahoma Bar Association v. Hummel*, 2004 OK 30, 89 P.3d 1105 (one year suspension for lawyer suffering from clinical depression who had neglected client matters, failed to communicate with clients, failed to turn over client files and funds, failed to disclose adverse facts to client and entered into settlement agreement without authority, having previously received two private reprimands).

¶ 20 In light of the facts and circumstances presented here we find the appropriate discipline for respondent is suspension from the practice of law for a period of three months. The complainant's motion to assess costs against the respondent is granted and respondent is ordered to pay such costs, in the amount of $1,189.14, within ninety days after this opinion becomes final.

¶ 21 WINCHESTER, C.J., EDMONDSON, V.C.J., HARGRAVE, OPALA, COLBERT, JJ., concur.

¶ 22 WATT, J., concurs in part, dissents in part.

¶ 23 KAUGER, TAYLOR, REIF, JJ., dissent.

¶ 24 TAYLOR, J., dissenting, and joined by Watt, J., I would impose a harsher discipline.

KAUGER, J., with whom REIF, J., joins dissenting.

¶ 1 The substance of the respondent's misconduct is that, in 2002, the attorney failed to file an action to collect $517.73 owed a client and misrepresented the fact of his failure to file to the client and to the Bar Association. The ninety day suspension imposed on the respondent by the majority's opinion is not consistent with discipline imposed on other attorneys in similar instances, especially in light of the multitude of mitigating circumstances in this cause. Therefore, I dissent.

¶ 2 This Court must craft discipline which is consistent with that imposed on other attorneys in order to avoid disparate treatment.[1] We also consider mitigating circumstances in our assessment of the appropriate measure of discipline.[2]

---

1. *State ex rel. Okla. Bar Ass'n v. Schraeder*, 2002 OK 51, ¶ 6, 51 P.3d 570; *State ex rel. Okla. Bar Ass'n v. Eakin*, 1995 OK 106, ¶ 9, 914 P.2d 644.

2. *State ex rel. Okla. Bar Ass'n v. Schraeder*, see note 1, supra at ¶ 32; *State ex rel. Okla. Bar Ass'n v. Eakin*, see note 1, supra.

¶ 3 The mitigating circumstances in this cause are substantial and myriad. First, the respondent collected no fee from the client at any time. Second, of his own accord, and before any action was commenced by the Bar, the respondent paid the client $550 out of his own pocket. In other words, the respondent's client in this matter did not suffer any pecuniary loss, but instead actually received a net gain without ever paying a fee. Conversely, the respondent received no money from the client, but instead suffered a pecuniary loss on his own initiative. Third, in 2002, around the time of the misconduct, the respondent had a heart attack. This was the beginning of a series of serious and long-term health problems, including coronary artery disease, a congenital heart valve deformity, and hemorrhaging blood vessels in his eye. Fourth, as a result of his health problems, the respondent voluntarily closed his practice in 2004, moved to New Hampshire, and has not practiced law since. Fifth, the respondent was divorced shortly before closing his practice. Sixth, the respondent was admitted to the Bar in 1974 and has no prior instances of professional misconduct.

¶ 4 Based on these facts, the PRT recommended a two year and one day suspension. The PRT made the same recommendation in *State ex rel. Okla. Bar Ass'n v. Lile*, 2008 OK 82, ¶ 27, 194 P.3d 1275, in which Lile repeatedly abused his position as an appellate judge to attempt to influence judges, prosecutors, police officers, Regimented Inmate Discipline Program employees, and members of the Board of Corrections on behalf of his son and girlfriend. He also filed false travel claims to seek state reimbursement for personal trips, and sought state reimbursement for purchases made by his girlfriend. In *Lile*, we unanimously rejected the recommendation of the Bar and PRT and ordered that Lile be disbarred. Here, the majority has rejected the two year and one day suspension recommended by the PRT in favor of a ninety day suspension, but even this shorter suspension is disparate treatment.

¶ 5 There have been many prior cases of attorneys who have neglected client matters. In eleven prior cases, an attorney engaged in client neglect was disciplined by a public censure.[3] In some of these cases, the attorney engaged in some form of misrepresentation as well.[4] The cases in which we sus-

3. *State ex rel. Okla. Bar Ass'n v. Kelley*, 2002 OK 10, 48 P.3d 777 (Neglected to keep client informed. Repeatedly failed to respond to Bar inquiries. Mitigated by lack of economic harm, attorney's choice to seek counseling, and lack of prior discipline.); *State ex rel. Okla. Bar Ass'n v. Brewer*, 1999 OK 101, 998 P.2d 605 (Began but abandoned probate action. Didn't file bankruptcy petition. Returned retainer. Enhanced by prior private reprimand.); *State ex rel. Okla. Bar Ass'n v. Green*, 1997 OK 39, 936 P.2d 947 (Failure to file an answer resulted in a default judgment. Failure to enter an appearance resulted in summary judgment on the issue of liability.); *State ex rel. Okla. Bar Ass'n v. Donnelly*, 1992 OK 164, 848 P.2d 543 (Failed to file suit and misrepresented the fact to client. Mitigated by fact that client suffered no economic harm and that attorney was a recovering alcoholic.); *State ex rel. Okla. Bar Ass'n v. Busch*, 1992 OK 68, 832 P.2d 845 (Failed to appear in one matter. Failed to notify client of dismissal of another matter. Enhanced by prior private reprimand.); *State ex rel. Okla. Bar Ass'n v. Blackburn*, 1991 OK 35, 812 P.2d 379 (Filed a criminal appeal, but didn't file a brief. Represented husband in a divorce despite the fact that wife had contacted him first. Circumstances mitigated by the fact that the attorney was a recovering addict.); *State ex rel. Okla. Bar Ass'n v. Landman*, 1989 OK 162, 784 P.2d 1064 (Failed to file various motions in several actions. Mitigated by attorney's long history of professional competence and personal tragedies affecting the attorney and her family around the time of the misconduct.); *State ex rel. Okla. Bar Ass'n v. Borders*, 1989 OK 101, 777 P.2d 929 (Failed to notify mother of criminal defendant client about status of case. Lost an abstract of title); *State ex rel. Okla. Bar Ass'n v. Lobaugh*, 1988 OK 144, 781 P.2d 806 (Failed to file an action and kept $250 retainer. Misrepresented to client that case had been filed. Circumstances mitigated by the fact that the PRT conducted hearing without lawyer present, lawyer's long history of professional competence, and fact that misconduct occurred in only one matter.); *State ex rel. Okla. Bar Ass'n v. Braswell*, 1983 OK 63, 663 P.2d 1228 (Filed claim after limitations period because had several actions pending for the same client and likely misplaced the unfiled claim.); *State ex rel. Okla. Bar Ass'n v. Foster*, 1969 OK 23, 454 P.2d 654 (Failed to file a suit.). *See also State ex rel. Okla. Bar Ass'n v. Simank*, 2001 OK 13, 19 P.3d 860 (Public reprimand for employing a felon and repeatedly failing to respond to Bar inquires.);

4. *State ex rel. Okla. Bar Ass'n v. Donnelly*, see note 3 supra (Misrepresented to client that case had been filed.); *State ex rel. Okla. Bar Ass'n v. Lobaugh*, see note 3, supra (Misrepresented to client that case had been filed.).

pended an attorney who had engaged in client neglect and misrepresentation usually included more than one instance of neglect, a loss suffered by one or more clients, and few if any mitigating circumstances.[5]

¶ 6 In cases where client neglect in a single matter resulted in more than a public censure, the facts were not analogous to the instant cause. In *State ex rel. Okla. Bar Ass'n v. Denney*, 1980 OK 143, ¶¶ 2–8, 617 P.2d 1351, an attorney received a ninety day suspension for his failure to file a brief with his petition in error in a divorce action and failure to file a brief with his application to withdraw the mandate, effectively causing the dismissal of the case. The attorney presented no mitigating circumstances.[6] In *State ex rel. Okla. Bar Ass'n v. Robertson*, 1980 OK 176, ¶¶ 1–4, 620 P.2d 382, an attorney was suspended for ninety days when his failure to appear resulted in an $83,000 default judgment against his client. The attorney's discipline was mitigated by the fact that the attorney's practice was being dismantled at the time of the misconduct and by the attorney's long history of competent practice. In *State ex rel. Okla. Bar Ass'n v. Thompson*, 1993 OK 144, ¶¶ 2–13, 864 P.2d 339, an attorney was suspended for ninety days when his failure to appear resulted in a default judgment against his client. The attorney also misrepresented his actions to his client and to the Bar. The attorney's discipline was mitigated because the attorney was a recovering alcoholic and had a long history of competent practice.

¶ 7 In *State ex rel. Okla. Bar Ass'n v. Rozin*, 1991 OK 132, ¶¶ 2–6, 824 P.2d 1127, the attorney was suspended for 60 days because he neglected a case and fabricated a judgment in attempt to hide his misconduct. His sentence was mitigated by his lack of prior discipline, the fact that he had only a single occurrence of misconduct, and the lack of any economic harm to the client or gain by the attorney. There is not a single case in which an attorney, who retired after committing a single act of client neglect which resulted in no loss to the client or gain to the attorney, was suspended.

¶ 8 Bar discipline is never intended to be punitive. There are three primary purposes of bar discipline: 1) to protect the public, legal profession, and judiciary from the dangers of professional misconduct; 2) to maintain the public's confidence in the legal profession; and 3) to generally and specifically deter attorneys from engaging in similar misconduct in the future.[7] Because the respon-

---

5. **Two Years and a Day:** *State ex rel. Okla. Bar Ass'n v. Jenkins*, 2001 OK 54, 27 P.3d 91 (Didn't file or filed late in five actions. Kept $3000 retainer until client got it back from him in small claims. Kept $1500 retainer until client got it back from him in small claims. Kept a $1000 retainer and two separate $500 retainers.); *State ex rel. Okla. Bar Ass'n v. Bolusky*, 2001 OK 26, 23 P.3d 268 (Failed to file a case and refused to return file to client. Neglected client matters in two other cases. Failed to appear in a fourth case. Failed to file in a fifth case and fabricated a judgment. Misrepresented to clients and Bar. Failed to respond to Bar inquiry. Mitigated by attorney's history of depression.); *State ex rel. Okla. Bar Ass'n v. Maynard*, 1972 OK 32, 494 P.2d 655 (Didn't file a case and kept $250 retainer and documents. Didn't file a case, kept retainer, and client suffered a default judgment. Wrote a hot check.)

   **One Year:** *State ex rel. Okla. Bar Ass'n v. Hummel*, 2004 OK 30, 89 P.3d 1105 (Neglected clients. Failed to return money and documents to clients. Made misrepresentations to clients. Enhanced by two prior private reprimands. Mitigated by attorney's clinical depression.)

   **90 Days:** *State ex rel. Okla. Bar Ass'n v. Latimer*, 1972 OK 106, 499 P.2d 399 (Filed but abandoned two related probate actions.)

   **60 Days:** *State ex rel. Okla. Bar Ass'n v. Benefield*, 2002 OK 37, 51 P.3d 1198 (Didn't file three separate cases or return documents. Until PRT hearing, kept $1500 in retainers. Failed to respond to Bar. Enhanced by prior private reprimand.).

   **30 Days:** *State ex rel. Okla. Bar Ass'n v. Schraeder*, see note 1, supra (Failed to file a criminal appeal and communicate with client's family. Failed to take action in several matters for one client. Failed to timely respond to Bar inquiries. Mitigated by professional burnout syndrome.); *State ex rel. Okla. Bar Ass'n v. Jaques*, 2000 OK 57, 11 P.3d 621 (Employee fabricated a judgment. Forged documents. Not diligent in a criminal appeal. Mitigated by lack of prior discipline.).

6. *State ex rel. Okla. Bar Ass'n v. Denney*, 1980 OK 143, ¶¶ 9–11, 617 P.2d 1351.

7. *State ex rel. Okla. Bar Ass'n v. Burns*, 2006 OK 75, ¶ 25, 145 P.3d 1088; *State ex rel. Okla. Bar Ass'n v. Carpenter*, 1993 OK 86, ¶ 16, 863 P.2d 1123; *State ex rel. Okla. Bar Ass'n v. Donnelly*, see note 3, supra at ¶ 14.

dent no longer practices law, the discipline recommended cannot serve the first purpose of bar discipline, nor can the discipline serve the purpose of specific deterrence. Given the many pertinent mitigating circumstances, it will do little to serve the second and third purposes of bar discipline to so harshly discipline the attorney.

### CONCLUSION

¶ 9 The nondelegable, constitutional responsibility to regulate the practice, ethics, licensure, and discipline of the practitioners of the law is solely vested in this Court.[8] In order to fulfill this responsibility, while avoiding disparate treatment and being cognizant of the compelling mitigating circumstances, I would impose a private reprimand.

---

**8.** *Arkansas Valley State Bank v. Phillips,* 2007 OK 78, ¶ 13, 171 P.3d 899; *State ex rel. Okla. Bar Ass'n v. Pacenza,* 2006 OK 23, ¶ 18, 136 P.3d 616; *State ex rel. Okla. Bar Ass'n v. Holden,* 1995 OK 25, ¶ 1, 895 P.2d 707.