OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BLACK

 

 
 

 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BLACK
2018 OK 85
Case Number: SCBD-6557
Decided: 10/30/2018
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2018 OK 85, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

STATE OF OKLAHOMA ex rel., OKLAHOMA BAR ASSOCIATION, Complainant,
v.
SHAWNNESSY MURPHY BLACK, Respondent.

ORIGINAL PROCEEDING FOR ATTORNEY DISCIPLINE

Â¶0 The Oklahoma Bar Association filed a Complaint against Shawnnessy Murphy Black alleging multiple violations of the Oklahoma Rules of Professional Conduct, 5 O.S. 2011, Ch. 1, App. 3-A, and the Rules Governing Disciplinary Proceedings, 5 O.S., 2011, Ch. 1, App. 1-A. The Oklahoma Bar Association (OBA) identified four separate client grievances. The issues raised by clients include missing court dates, fee disputes, Respondent's failure to provide accountings, and lack of communication. Following a hearing, the Professional Responsibility Tribunal (PRT), recommended Respondent be suspended for six months and she be required to enter into a contract with Lawyers Helping Lawyers for one year. The OBA agreed with the PRT. Upon de novo review, we determine the appropriate discipline is for Respondent to receive a public censure and be required to enter into a contract with Lawyers Helping Lawyers for a period of one year.

RESPONDENT PUBLICLY CENSURED; CONTRACT WITH 
LAWYERS HELPING LAWYERS; COSTS IMPOSED

Katherine M. Ogden, Oklahoma Bar Association, for Complainant,

Amy L. Alden, Jack S. Dawson, MILLER DOLLARHIDE, P.C., 309 NW 9th Street, Oklahoma City, OK 73102, for Respondent.

OPINION

EDMONDSON, J.:

Â¶1 On August 31, 2017, the OBA filed a formal complaint against Shawnnessy Murphy Black (Respondent), pursuant to Rule 6 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. 2011, Ch. 1, App. 1-A, setting forth grievances from four separate clients alleging violations of Rules 1.3, 1.4, 1.5, 1.15, 8.1(b) and 8.4 of the Oklahoma Rules of Professional Conduct (ORPC) and Rules 1.3 and 5.2, RGDP, that warrant the imposition of professional discipline. The Respondent and the OBA appeared before a three-member panel of the PRT and presented joint stipulations, mitigation, and recommendations for discipline. The trial panel accepted the stipulations and filed its report setting out findings of fact, conclusions of law, and recommendation of discipline to this Court. The OBA filed its Brief-in-Chief and Respondent filed an Answer. The matter is before us for de novo review of the proceedings.

COUNT 1 - Donna Ford

Â¶2 Respondent was retained to represent Donna Ford in an employment litigation matter, Canadian County, CJ-2010-1104. Specifically, Respondent agreed to file an objection and contest an alleged agreement to settle. In the latter part of 2012 and in early 2013, communication with Respondent became difficult.[1] In early 2013, Respondent missed court dates. In 2014, Respondent and Ford attended an unsuccessful mediation. Later that year, Ford's case was dismissed due to Respondent's failure to respond to discovery and to appear at court deadlines. Respondent offered to file a motion to reopen the case. In 2015, Ford requested an accounting. Respondent did not respond to Ford. Respondent admits to receiving all funds paid by check. Ford testified there were additional cash payments made. There was no written record by Ford of these additional payments and Respondent disputed receiving cash funds. Respondent admitted that she did not have any underlying client files or accounting information. However, she believes her former spouse discarded her client files after he kicked her and her children out of the marital home. Prior to being kicked out, the files were located in her client filing cabinet. When she was allowed access again to her possessions, the filing cabinet was intact, but empty.

COUNT 3 - Talitia Watson

Â¶3 Respondent was retained by Talitia Watson to initiate a notice of relocation in a child custody matter. Watson paid Respondent a retainer and signed a contract. She also made an additional payment. After Respondent had prepared documents, Watson changed her mind and decided not to relocate and asked Respondent to take no further action. Watson asked for an accounting and requested that any unearned fees be returned to her. Respondent understood Watson and she agreed to a flat fee arrangement, and that the fee was earned when paid. Respondent did not reply to Watson's request for an accounting. Respondent did not timely reply to the OBA inquiry regarding this matter. She responded on April 3, 2017 stating that the retainer paid was not refundable and that she had worked more than 10 hours. Respondent indicated her typical hourly rate was $150/hour and that she earned the entire fee.

COUNT 4- Jerome Demby

Â¶4 In June of 2016, Respondent was retained to represent Jerome Demby in a custody matter, Oklahoma County Case No. FP-14-185. Demby paid Respondent $1500 to complete the matter. Respondent had difficulty communicating with Demby during the client relationship. Respondent entered her appearance in the case and attended mediation with Demby. Respondent subsequently stopped responding to Demby's communications and she did no further work in the case. Demby filed a complaint with the OBA. Respondent testified that she did not have a written contract with Demby. Respondent testified that she worked at least ten hours of time on this custody matter, and believes she earned the entire $1500 retainer paid. Respondent testified that Demby's direct deposit of monies into her account was easier for Demby due to his personal banking needs and travel schedule. The OBA mailed a letter dated May 10, 2017 to Respondent's official roster address to notify her that a matter had been opened for formal investigation. The OBA also requested that Respondent respond within twenty days as required by Rule 5.2, RGDP. Respondent failed to respond as required. Additional letters were sent with no response.

Â¶5 The PRT found that with respect to Counts 1, 3 and 4, the OBA proved by clear and convincing evidence that Respondent violated Rules 1.3 (Diligence), 1.4 (Communication), 1.5 (Fees), 1.15(d) (Failure to provide accounting or unearned fees) and 8.4(d) (Conduct prejudicial to the Administration of Justice) of the Rules of Professional Responsibility.

COUNT 2 - Karen Thomas 

Â¶6 Respondent and the OBA stipulated to all of the allegations contained in the Complaint with respect to the Thomas grievance. All of the allegations set forth in Count 2 of the OBA Complaint pertain solely to a violation of Rule 5.2 RGDP due to Respondent's failure to timely respond to the OBA's investigation of the Thomas grievance. The record does not contain any details regarding the substance of the grievance filed by Thomas.

Â¶7 The OBA investigator testified about the numerous efforts made by the OBA to provide notice to Respondent of the various client complaints that comprise this disciplinary matter. Respondent testified she was unable to provide much of the requested information as she had no access to the client file materials. Respondent did not dispute the efforts made by the OBA to contact her and she did not dispute her failure to timely respond to OBA inquiries. The PRT found the OBA proved by clear and convincing evidence that Respondent is in violation of Rule 5.2, RGDP.

STANDARD OF REVIEW

Â¶8 In bar disciplinary proceedings, this Court exercises exclusive jurisdiction as a licensing court, not as a reviewing tribunal. State ex rel. Okla. Bar Ass'n. v. Berger, 2008 OK 91, Â¶ 12, 202 P.3d 822, 825. Our review of the proceedings is de novo and we are not bound by the recommendations of the PRT. State ex rel. Okla. Bar Ass'n. v. Todd, 1992 OK 81, 833 P.2d 260, 261; State ex rel. Okla. Bar Ass'n. v. Boone, 2016 OK 13, Â¶ 2, 367 P.3d 509, 514.

Â¶9 It is this Court's responsibility to examine the record to determine whether it contains clear and convincing evidence of professional misconduct by the Respondent and, if so, determine the appropriate discipline. State ex rel. Okla. Bar Ass'n. v. Stutsman, 1999 OK 62, 990 P.2d 854. Protection of the public and purification of the Bar are the primary purposes of disciplinary proceedings rather than to punish the accused lawyer. State ex rel. Okla. Bar Ass'n v. Givens, 2014 OK 103, 343 P.3d 214. The record is sufficient for our de novo review.

DISCIPLINE

Â¶10 The PRT and the OBA recommended a six-month suspension for Respondent's client neglect and her failure to timely respond to the disciplinary inquiries from the OBA. However, the recommendation of the PRT for a six-month suspension is not binding on this Court. State ex rel. Okla. Bar Ass'n v. McBride, 2007 OK 91, Â¶ 15, 175 P.3d 379, 386. This Court has imposed a wide range of discipline for similar conduct ranging from public censure to suspension. State ex rel.Okla. Bar Ass'n. v. Chapman, 2005 OK 16, Â¶ 13, 114 P.3d 414, 416.[2] We have consistently held that where an attorney is guilty of client neglect "without affirmative acts of harmful conduct, the appropriate discipline is public censure." State ex rel. Okla. Bar Ass'n. v. Borders, 1989 OK 101, Â¶ 13, 777 P.2d 929, 930.

Â¶11 The record before us has no evidence of any intentional act of harmful conduct by the Respondent. To the contrary, there is overwhelming evidence of overlapping and potentially devastating life events endured by Respondent that serve to mitigate the severity of discipline to be imposed.

Â¶12 From approximately 2010 through 2017, Respondent had significant family events occur in her life. She had two marriages end in divorce, she lived with domestic violence, she lived without a permanent residence for 3 months after her husband threw her out, she was unable to drive for an extended period of time due to a medical condition, her brother was diagnosed with terminal cancer and died, her sister had brain cancer and surgery, and her mother had surgery. Some of the hospitalizations of family members were overlapping. Respondent also had two young children at home. During the periods of time of family hospital stays, Respondent would work all day, come home to care for her children, and then go to the hospital to oversee care for her loved ones. She would then either remain at the hospital all night or return back home late at night and then begin this cycle over again the next day. Respondent also became a foster parent to a teenage mother with an infant and a toddler. The foster teenage mother abandoned her young children with Respondent, leaving her with the sole responsibility for the care of the infant and toddler.

Â¶13 As a result of these events, Respondent developed anxiety and depression. She did not recognize at the time that she was ill and needed assistance. In 2017 she was diagnosed with major depression. She was prescribed medication and began counseling. Since being diagnosed, Respondent has faithfully followed the guidance and treatment recommendations for these conditions.

Â¶14 Today, Respondent's depression and physical health problems are under control and monitored by appropriate health care professionals. Her treating medical providers have opined that she is fit to return to the practice of law. Respondent has altered her lifestyle and has gained necessary coping skills. Once Respondent realized the severity of her condition and gravity of the disciplinary complaints, she has been cooperative and has expressed deep and sincere remorse for her actions.

Â¶15 This is Respondent's first disciplinary proceeding with no prior complaints. In addition, the evidence from multiple witnesses substantiated that Respondent is a dedicated child advocate and has gained the respect of the judges and her co-workers at the Juvenile Justice Center. In fact, the consistent testimony was that while Respondent was employed by the non-profit, Oklahoma Lawyers for Children, she would go above and beyond the requirements of her job to ensure the deprived children were well represented.

Â¶16 The cases relied on by the OBA in support of a six-month suspension involve attorneys who made intentional misrepresentations to clients, had at least one prior disciplinary complaint, had failed to respond or appear before the PRT, lacked insight into their behavior, failed to accept responsibility for their actions and/or caused irreparable harm to their clients.[3]

Â¶17 This record has no evidence of any intentional act of harmful conduct by the Respondent. In contrast, the record is filled with evidence that Respondent endured multiple serious life events but lacked the reserves and tools to sustain herself. On the other hand, witnesses came forward to testify about Respondent's diligence and competency in representing clients.

Â¶18 We have previously determined that a public censure is the appropriate discipline for an attorney who had neglected client matters, failed to timely and adequately respond to the disciplinary process, but also had significant mitigating factors. State ex rel. Okla. Bar Ass'n. v. Chapman, 2005 OK 16, 114 P.3d 414. We have consistently recognized that public censure is appropriate where "there is scant evidence of intentional acts of harmful conduct" by the offending attorney. Id. Â¶ 14; see also State ex rel. Okla. Bar Ass'n. v. Prather, 1996 OK 87, 925 P.2d 28; State ex rel. Okla. Bar Ass'n. v. Busch, 1992 OK 68, 832 P.2d 845. A public censure for Respondent in this matter is appropriate given the goal of our disciplinary process is not "punishment but to preserve the integrity of the bar and courts to protect the public." Prather, 1996 OK 87, Â¶ 19, 925 P.2d at 30-31.

Â¶19 The evidence reflects that the life events that occurred during this difficult time in Respondent's life left her depressed and unable to appropriately respond. Respondent has never had any other disciplinary matter before this Court. As of the time of the PRT hearing she was deemed to be competent and fit to return to the practice of law. The evidence also reflects that once she realized the depth of her depression, she sought treatment and has consistently followed all recommendations and has expressed a commitment to ongoing treatment.

Â¶20 When considering other similar cases that have come before this Court, this matter warrants a public censure, a one-year contract with Lawyers Helping Lawyers, and payment of $3,862.44 in costs as an appropriate discipline to be imposed. Respondent shall pay costs within six months of the filing of this Opinion.

Â¶21 RESPONDENT PUBLICLY CENSURED; CONTRACT WITH LAWYERS HELPING LAWYERS; COSTS IMPOSED.

CONCUR: COMBS, C.J., GURICH, V.C.J., EDMONDSON, WYRICK, and DARBY, JJ.

CONCUR IN PART; DISSENT IN PART: KAUGER, WINCHESTER, COLBERT, and REIF, JJ.

KAUGER, J., with whom Winchester, Colbert, and Reif, JJ join, concurring in part; dissenting in part

I would issue a private reprimand and strike the costs.

FOOTNOTES

[1] Transcript, Vol. 1, page 30 and OBA Exhibit 1, page 54-69, OBAD #2146, SCBD #6557, State of Oklahoma, ex rel., The Oklahoma Bar Association, Complainant, v. Shawnnessy Murphy Black, Respondent.

[2] State ex rel. Okla. Bar Ass'n. v. Prather, 1996 OK 87, 925 P.2d 28, public censure for attorney who had three prior private reprimands who engaged in unprofessional conduct for client neglect; State ex rel. Okla. Bar Ass'n. v. Busch, 1992 OK 68, 832 P.2d 845, public reprimand for attorney who failed to prosecute cases and dismissed without client knowledge, with prior discipline history of private reprimand, but had no affirmative acts of misconduct; State ex rel. Okla. Bar Ass'n. v. Angel, 1993 OK 2, 848 P.2d 549, public reprimand for client neglect with two prior private reprimands for neglect; State ex rel. Okla. Bar Ass'n. v. Kelley, 2002 OK 10, 48 P.3d 777, public censure for attorney for neglect of client matter without affirmative acts of harmful conduct against client. See also infra note 3.

[3] State ex rel. Okla. Bar Ass'n. v. Sheridan, 2003 OK 80, 84 P.3d 710; State ex rel. Okla. Bar Ass'n. v. Rowe, 2012 OK 88, 288 P.3d 535; State ex rel. Okla. Bar Ass'n. v. Boone, 2016 OK 13, Â¶ 20, 367 P.3d 509, attorney had two prior disciplinary actions with private reprimands and demonstrated a "disturbing pattern of failing to communicate to clients and neglecting their cases"; State ex rel. Okla. Bar Ass'n. v. McCoy, 2010 OK 67, 240 P.3d 675, attorney was disbarred by the 10th Circuit, and although he had significant mitigation evidence he lacked insight and blamed others for difficulties; his actions also included multiple counts of misconduct involving deceit, dishonesty and fraud.